Ruffest, Chief Justice.
 

 — The only question made in the Superior Court was, whether the plaintiff was bound to pay the tax imposed on merchants,or that on pedlars; he offering to pay the former, and the sheriff distraining for the latter. On that point, the opinion of this Court, like that of the Superior Court, is against the plaintiff.
 

 The point arises on the act of 1822, c. 1129; which lays ■ a tax of twenty dollars on every vehicle employed in the transportation of his goods by each person who shall peddle in any county in this state. The act does not define what shall constitute peddling within a county, or who is a pedlar. The term was supposed to be sufficiently understood in common parlance, or had before, a legal meaning. By the act of 1784, c. 3, s. 11 and 12, (which is omitted in the recent revisáis,) it is enacted, that no person shall hawk, or
 
 carry goods up and down the state,
 
 without first obtaining a permit from some County Court; and that all
 
 pedlars and other itinerant traders
 
 shall, for the permit, pay fifty pounds as a license to hawk and sell for one year. In the sense of the law, therefore, a pedlar is a petty dealer, who travels from place to place with merchandise for sale, and selling it by retail at other places, than that of his fixed abode, or settled place of business. This is made still clearer by the fourth section of the act of 1822, which lays certain other taxes on every merchant or jew-eller, who shall sell to certain amounts, in any retail
 
 store ;
 
 and thus distinguishes between those who carry on
 
 the
 
 same business at one place permanently, and those who transport their wares from town to town, or county to county. We therefore think, the plaintiff is a pedlar, within the meaning of the statute.
 

 But in this Court another question has been argued, which is of more importance, as it involves an inquiry into the power of the legislature to impose the tax, either on merchants or pedlars. The words of the second see
 
 *21
 
 tion are “ that every person who shall peddle in any county, goods not of the growth or manufacture of this state, or any wooden clock, or the machinery or materials thereof, which shall not be of the manufacture of this state,
 
 or jewelry,
 
 which machinery or clock shall be manufactured of materials, not of the growth, produce, or manufacture of this state, shall pay a tax of twenty dollars.” The case states that the articles retailed by the plaintiff, were articles of jewelry, not manufactured in this state, but imported into it. Upon this the question has been made, whether a tax on articles imported into this state, or on the dealing in them, or a law requiring the purchase of a license to deal in them, be not repugnant to the provisions of the Constitution of the United States, that “ no state shall lay any imposts, or duties, on imports or exports, except what shall bo absolutely necessary for executing its inspection laws,” and that “ Congress shall have power to regulate commerce with foreign nations, and among the several.states, and with the Indian-tribes.”
 

 Upon this question, the Court is not under the necessity of presenting any original views of their own. It seems to be fully decided by the opinions of the Supreme Court of the United States, in
 
 M'Cullock v. The State of Maryland,
 
 4 Wheat. 316, and
 
 Brown
 
 v.
 
 The State of Maryland,
 
 12 Wheat. 419. In the latter case, it was held, that an act, requiring the importer'of-gopds from a foreign nation, to pay a tax for a license to: sell them by the bale or package, was void. But it was admitted by Chief Justice Maeshall, through whom the voice of the majority was given,, that the words of the Constitution must necessarily be understood in a limited sense; /and that although it was not easy to say precisely how far the restriction encroached on the general power of a state, to tax persons or property within her jurisdiction, yet, that the restriction, upon a fair construction ceased, whenever the goods imported, became mixed with, or incorporated into, the general mass of property of the state. Á tax on the sale in bulk by the importer, denies the free privilege of making such incorporation; but when once made, the restriction ceases, and the unshackled power of taxation commences.
 
 *22
 
 As examples of such incorporation, as will make the imported articles subjects of state taxation, the following instances are stated by the Chief Justice, as being undeniable. If the importer sell the goods, and thereby uses the privilege purchased by the import duty; or if he break up his packages, and travel with the goods, as a pedlar; or, if he keep a particular article, as a piece of plate or jewelry, for his own use; or if he sell in a peculiar manner, on which a tax is imposed, as by auction. In each of these cases, the right of the state to tax, is deemed undeniable; because it is a necessary power, and to be interfered with so far only as the principle, on which the prohibitions of the constitution, applies. That principle is, that the right of importation is acquired from the United States exclusively, and consists not barely in the right to bring the goods into the country, but also to mix them, when here, with the mass of property by a sale at wholesale. But when thus mixed, the right of the importer does not pass to his assignee, nor does the former exemption from taxation on a first sale adhere to the goods upon a re-sale. Nay, although the importer continue to be the owner, the goods become amalgamated with the other goods of the state, by either being withdrawn from the market, as subjects of commerce, and diverted to his private use, or by being offered for sale in small parcels, or in a peculiar manner, as by auction, by hawking, or otherwise by retail.
 

 These inferences are made from the language of the Chief Justice, and, if there could be any doubt of their accordance with his meaning, that doubt is removed by the remarks of Mr. Justice Thompson, who dissented. He states it as an admission of the majority of the Court, that a tax on retail dealers in imported merchandize is not in violation of the Constitution. The point of difference between them, was solely as to the period, when the right of the state to tax, accrued, or as to the condition and state in which the goods must be, to become the subjects of taxation. All agreed in two points; that the state could not impose a duty on the act of importation; and that it could do so, where the goods became mixed up with the other
 
 *23
 
 goods of the country by the packages being broken up, and sales by retail, in any mode attempted. The majority of the Court held, that the prohibition went beyond a tax on the introduction of the goods into the country, and embraced one on their introduction into the mass of the general property of the state, by a sale by the importer by wholesale. Judge Thompson, on the contrary, thought that it followed from the right to tax retail dealers, that there was the same right to tax those by wholesale; as he saw no intermediate between the two extreme alternatives, that the prohibition was, on the one hand, only against taxing the act of importation, and did not attach to the article, or 'to the disposition of it; or, on the other hand, that it was against the right to tax the article at all, or any and all future dispositions of it; which last hypothesis, he, as well as the other members of the Court, rejected as altogether untenable.
 

 The result of the reasoning is this; that the term “ imports,” in the Constitution, means not only the “ act of importation,” but the “ articles imported ;” but that in the latter sense, the exemption from taxation continues only until the first wholesale disposition of them. After such disposition, or after the packages are broken up and the goods appropriated to private use or offered for sale at retail, or in any peculiar manner, they cease to be imports, “ articles imported,” within the meaning of the Constitution. They then become the subjects of state taxation, in all its modifications, either on the value or on the sale, as other property may be taxed.
 

 It would seem to follow, that, a tax may constitutionally be imposed on such goods, thus appropriated to private use, or offered for sale in a peculiar manner, although they be taxed by the name of goods imported, or not of the production of the state. For a state may certainly exercise her own discretion in selecting the objects of taxation, amongst those which are subject to taxation; and the name given in the statute is only .the mode of designation or description. Whenever the power of the state to tax arises, it is because the thing taxed is not “ an article imported,” as understood in the Constitution; and if the
 
 *24
 
 state tax it by that name,
 
 that
 
 cannot bring it again, and by force thereof within the Constitution, and make it be such “ an article imported,” as is not subject to taxation.
 

 But it is not necessary that the Court should in this case, pursue the argument on that point to a conclusion; and it may be left to an occasion, when the point will be unavoidable, whether the act, so far as it profess to tax a dealer in articles, brought from another country or state, by retail or hawking, does lay a discriminating tax, and is therefore void under the Constitution. At present the sole question is, whether the act is void in those parts, in which no discrimination is made in it, upon
 
 the single
 
 ground
 
 that
 
 imported articles are, as such, perpetually exempt from state taxation. Such is the case here; for although the act enumerates many articles under the description, “ not of the growth, produce or manufacture of this state,” there is in reference to the article
 
 jewelry,
 
 no such qualifications. It is taxed as jewelry, and not as jewelry imported. It certainly, therefore, comes within the rule laid down by the Supreme Court. If the argument against the tax were well founded, the Constitution would be made to do in the worst form, that which, it is said, it was the very object of this provision to prevent — namely, compel the state to discriminate in taxation; and that against her own citizens. For if an article imported be always exempt from taxation, articles of the like kind produced in the state may be taxed, and those only can be; so that every tax law would necessarily discriminate between home and foreign productions, against the former, and in favour of the latter; which was certainly not meant. Another clause of the Constitution, and the practical construction of it, affords a sti’ong illustration upon this point. It says no “tax or duty shall be laid by Congress on articles exported from any state;” which is much stronger than the word “ imports,” in the restriction upon the states; because that might be held, plausibly, to mean only the act of importation, while that on Congress expressly extends to
 
 articles exported.
 
 Yet it has been the constant practice of Congress to lay excise duties and direct taxes on specific articles, such as carriages and slaves, in every state, without
 
 *25
 
 any exception of such articles of-those descriptions as had been exported from another state. No- person ever contested the payment of the tax upon the..ground that the article was exempt, because it had once* been exported from another state. It is not in truth within the meaning of the Constitution; which, fairly construed, means such articles as have been separated from the mass of property of the state, with the view to exportation, and are. prepared in bulk for exportation. If Congress can tax property exported from one state, after it has been imported into another, and amalgamated with the. property of the latter, because it has then lost its distinctive character of an export, from the state of its production; the reason seems equally just, that the state into which it has been introduced should have the like power, of taxation, because it has lost its distinctive character-of an import into that state. It is in a condition then, which makes it no longer necessary to look to its origin, arid precludes all inquiry into it. It is state property, and as such, liable to the taxation of both governments.
 

 Per Curiam. Judgment affirmed»