Statement of Facts.

133  284
143  646
133  284
148  488
133  284
191   74
133      284
e 21 SC ³646
e 21 SC ⁴646
133      284
24 SC ⁶ 76

# COMMONWEALTH v. WILLIAM GARDNER ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF QUARTER SESSIONS OF SCHUYLKILL COUNTY.

Argued February 20, 1890—Decided March 17, 1890.

[To be reported.]

1. The carrying about from house to house of small packages of goods and offering them for sale, constitutes peddling within the purview of the act of April 17, 1846, P. L. 364, forbidding the sale by any person, as a hawker or peddler, of foreign or domestic goods, wares and merchandise, in the county of Schuylkill.

2. Whether the goods are the property of him by whom they are carried and offered for sale, or of another who employs the seller upon a salary, is immaterial; an agent who sells from door to door goods manufactured by his principal, but has no personal interest in the goods or their proceeds, is a peddler within the meaning of said act.

3. The prohibition of the act is not directed against the sale, from house to house, by a farmer or gardener, of the natural products of the soil grown by himself; but against the itinerating vender, who carries his goods about on his back or in a cart or wagon, in search of customers: per Mr. Justice WILLIAMS.

4. Said act being directed not to the right of an owner to sell his goods, but to the manner in which he may sell them, it is not in violation of the constitutional right of acquiring, possessing and protecting property, secured by § 1, art. I. of the constitution of Pennsylvania, but is a valid exercise of the police power of the state.

5. The sale from house to house within the county of Schuylkill by agents of the manufacturer, of goods manufactured by a corporation which is chartered in Rhode Island, whose factory is located in that state, and whose stockholders are all non-residents of Pennsylvania, is not interstate commerce.

6. The laws against peddling do not invade the exclusive right of Congress to regulate inter-state commerce, as they do not interfere with the free interchange of commodities between citizens of different states, and the citizen of another state while in Pennsylvania is subject to her police powers to the same extent as her own citizens.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 28 January Term 1890, Sup. Ct.; court below, No. 557 June Term 1889, Q. S.

On June 19, 1889, the grand jury returned as a true bill an

indictment charging William W. Unger, William Gardner, George Shaub and R. Sinton with hawking and peddling goods within the county of Schuylkill, contrary to the provisions of the act of April 17, 1846, P. L. 364. The defendants pleaded not guilty.

At the trial on June 19, 1889, the jury rendered the following special verdict:

" The defendants sold from door to door in Mahanoy City, in the said county, on or about the 24th day of May, A. D. 1889, certain goods, to wit: soapine, or washing-powder, contained in packages or parcels ; the same being a substitute for soap, and valuable for domestic purposes. They sold the said goods as the employees and agents of the Kendall Manufacturing Company, which is formed under the laws of the state of Rhode Island, and has its office and works in the city of Providence, in the state of Rhode Island, and its members and officers are non-residents of the state of Pennsylvania. The said goods were of the said the Kendall Manufacturing Company's own manufacture and were manufactured in the state of Rhode Island, and were sold by the said defendants on account of said company. The said defendants had no interest in said goods nor in the proceeds thereof, but were paid a salary for their services by the said company. The defendants were arrested and indicted under the provisions of the act of assembly of Pennsylvania of April 17, 1846, § 1, P. L. 364. If the court shall be of opinion that the defendants are liable to the penalty of the said act, then a judgment of ' guilty ' to be entered against them ; if not, then a judgment of ' not guilty ' shall be entered in their favor. In case of a judgment of ' not guilty,' the county shall pay the costs."

On September 9, 1889, the court, without opinion filed, entered a judgment of guilty against all the defendants, and sentenced each of them to pay the costs of prosecution and a fine of $50. Thereupon the defendants took this appeal, specifying that the court erred :

1. In entering judgment of guilty.

2. In not entering judgment of not guilty.

3. In imposing the sentence aforesaid on each of the defendants.

Arguments.

*Mr. Cyrus G. Derr* and *Mr. John B. Hinkson*, for the appellants :

1. The words "hawker, peddler or travelling merchant" in the act of April 17, 1846, P. L. 364, do not embrace a person selling goods of his own manufacture, as the phrase, travelling merchant, is evidently intended as substitutionary for or explanatory of the preceding words, and merchant means one who buys as well as sells. The element of buying enters into the legal definition of the term, as well as the definition given by lexicographers: Bouvier Law Dict., tit. Merchant; Anderson's Law Dict. 670 ; Josselyn v. Parson, 7 Exch. 129. Nor is a manufacturer within the spirit of the statute, if it was passed, as held by this court in Commonwealth v. Brinton, 132 Pa. 69, to protect society from "idle and vagrant persons" who may "commit felonies ; " manufacturers do not belong to these classes. The agents of a manufacturer of course stand on the same plane with himself. If there be any doubt about the construction of the words, the doubt should be resolved against the commonwealth, the statute being highly penal: Gallagher v. Neal, 3 P. & W. 183 ; Cake v. Jacoby, 2 W. N. 391.

2. If construed to embrace these defendants, the statute must also embrace the farmer, the dairyman, and every one who has goods of any kind, produced by himself, for sale. If so construed it would be unconstitutional, because under § 1, article I. of the constitution of this commonwealth, the acquisition of property by manufacture and otherwise, and the disposal of it by sale or barter, are inherent and indefeasible rights which even the legislature cannot invade : Sharpless v. Mayor, etc., 21 Pa. 166. A statute making it a penal offence for the owner of chattels who wishes to dispose of them to go from house to house seeking a purchaser, is an invasion of that right and therefore void. The sale of a useful article to a willing purchaser, upon his door step, is a transaction which is a convenience to both parties, and is of such a character that its prohibition cannot be defended as an exercise of the police power. Nor can this statute be defended as a revenue measure, for it is prohibitory. It seems to be very little different in principle from the city ordinance held unconstitutional in Baltimore v. Radecke, 49 Md. 217, cited with approbation in Yick Wo v. Hopkins, 118 U. S. 356.

3. The exact question now presented has never been decided by this court. Neither Sharon Bor. v. Hawthorne, 123 Pa. 106, nor Warren Bor. v. Geer, 117 Pa. 207, touches it. Nor does Commonwealth v. Brinton, 132 Pa. 69, necessarily rule the present case, because the statutes therein construed all contain provisos saving a citizen who sells goods of his own manufacture, whereas the act now under consideration contains no such proviso. The question, however, has been decided by subordinate courts in accordance with the views we have presented: see Application for Peddlers' License, 22 W. N. 35, holding that the enactments making physical disability a test of eligibility to receive a license are void: Fromberg's Petition, 4 Pa. C. C. R. 354, holding that the legislature has no power to say that no one shall take about goods for the purpose of sale, and Sharon Bor. v. Golden, 4 Pa. C. C. R. 357, to the same effect. We submit that the act of assembly in question should be adjudged in conflict with the state constitution.

4. A statute prohibiting the sale by the owner or his agent in any part of this state, of goods manufactured and owned by citizens of another state, is an interference with the exclusive right of congress under the federal constitution to regulate inter-state commerce, and is therefore void, being in direct conflict with clause 4, § 8, article I. of the constitution of the United States: Mobile Co. v. Kimball, 102 U. S. 691; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196; Santa Clara Co. v. Railroad Co., 118 U. S. 394; Welton v. Missouri, 91 U. S. 280; Moran v. New Orleans, 112 U. S. 69; Walling v. Michigan, 116 U. S. 446; Lelough v. Mobile, 127 U. S. 640, overruling Osborn v. Mobile, 16 Wall. 479; Fargo v. Michigan, 121 U. S. 230; Robbins v. Taxing District, 120 U. S. 489; Philadelphia etc. S. Co. v. Pennsylvania, 120 U. S. 326; Asher v. Texas, 128 U. S. 129; Simmons Hardware Co. v. McGuire, 39 La. Ann. 240; Ex parte Rosenblate, 19 Nev. 439; Stowtenburgh v. Hennick, 128 U. S. 141. The residence of the agents employed by the foreign manufacturer, is immaterial. It was not made a point in any of the cases. It is the character of the employer that determines the question: Almy v. California, 24 How. 169. The oleomargarine law was sustained in Powell v. Commonwealth, 114 Pa. 265, affirmed in 127 U. S. 678,

Opinion of the Court.

upon the ground of detriment to the public health, an element not in this case; but a state has no power to prohibit the following of a lawful and innocent occupation: People v. Gillson, 109 N. Y. 389; (4 Am. St. Rep. 465.)

*Mr. John W. Ryon, Mr. George J. Wadlinger* and *Mr. R. H. Koch,* District Attorney, for the appellee, were not heard.

In their printed argument they contended that all the decisions cited for the appellants, wherein statutes have been declared unconstitutional and void, proceeded upon the ground that the statutes entirely discriminated against citizens of other states in favor of residents, or gave a privilege in favor of one class of persons as against another class seeking to engage in the same business, or else imposed a greater burden upon one class of the persons engaged or desiring to engage in the same business, and that none of these discriminations exist in the act of April 17, 1846, P. L. 364.

OPINION, MR. JUSTICE WILLIAMS:

The defendants were employed at a salary, by a manufacturing company in Rhode Island, to sell an article of merchandise called "soapine." They came into the county of Schuylkill in the regular course of their employment, and, as they say in the History of the Case in their paper-book, "were in the county temporarily, for the purpose of selling this article, as the agents of the manufacturers." When they had completed their canvass of the county of Schuylkill, they would, if continuing in the employment of the manufacturers, move on to another county, and subject its citizens to the same system of house to house visitation and personal solicitation.

By § 1, act of April 17, 1846, P. L. 364, the sale of foreign or domestic goods, wares, and merchandise in the county of Schuylkill, by any person or persons, as a hawker or peddler, is forbidden. The defendants were arrested under this act while engaged in selling "soapine" from house to house in Mahanoy City, and indicted. On the trial, the jury rendered a special verdict finding the defendants guilty of selling soapine from door to door, as the agents of the manufacturers, at a salary, with no personal interest in the goods or their proceeds, and submitted these facts to the judgment of the court. The

theory of the defendants appears to have been that the manner
in which their sales were made was of no consequence, if they
did not own the articles sold, but acted as the agents of the
owners.   But it is the manner of sale that makes a peddler.
Webster defines a peddler as " one that carries about small
commodities on his back, or in a cart or wagon, and sells them."
In the Law Dictionary of Rapalje and Lawrence, the word
is defined thus: " Peddler: A person who carries goods from
place to place for sale."   Whether the goods are the property
of him by whom they are carried and offered for sale, or of
another, who employs the seller, is of no possible consequence.
The business of the itinerant vender is the same in either case,
and so is the inconvenience and annoyance he inflicts on
others.   The merchant or store-keeper is a resident, has a fixed
place of business, where his goods are shown to those who
come in search of what they need, where he can be reached by
process, and compelled to make good his guaranty of the qual-
ity of his wares.   The peddler is a transient, with no fixed
place of business, who seeks customers by invading their
homes, and makes sales by persuading people to buy what they
do not need, and who, by the time he is wanted to answer for
his representations and engagements, is out of sight and out
of reach of process.   It is this matter of tracking a laboring
man or woman into the home, and laying siege to him or her
by an unscrupulous and self-possessed stranger, who is after
money and has no delicate scruples about the manner in which
he gets it, that has made the peddler a dread in the country and
in the villages, and has led the law makers in this and other
states to put the business under strict regulations when it is
not wholly forbidden.   In this case, the jury found that the
defendants were doing that which exactly fills the definition
of peddling; that is, carrying about from house to house small
packages of goods and offering them for sale.   It only remain-
ed for the court to pronounce upon the legal effect of the facts
found, and enter the appropriate judgment against the defend-
ants as peddlers.

The next point taken by the defendants is that, under the
constitution of the state, an owner of goods has an indefeasible
right to carry them when and where he pleases in search of
buyers.   This conclusion seems to be drawn from a paragraph

Opinion of the Court.

in the declaration of rights which asserts that all men have certain inherent and indefeasible rights, among which is that of "acquiring, possessing, and protecting property." But a distinction must be taken between the right and the manner of acquisition. The highwayman engages in his business with a view to acquire property, but the trouble is that his methods of acquisition are open to objection. The same is true of the gambler and the lottery dealer. Some business men have been known, in their zeal to acquire property, to use false weights and measures, but the law lays its hand on the methods they employ. It does not agree that the end justifies the means, and for that reason it punishes the highwayman, the gambler, the lottery dealer, and the cheat, while it recognizes their constitutional right to "acquire, possess, and protect property." Our laws relating to peddling are directed, not against the right of acquisition, but the manner in which some people exercise that right; not to the right of an owner to sell his goods, but to the manner in which he may sell them. Our peddling laws are therefore not in violation of the constitutional rights of the owners of goods, but are a wise exercise of the police power over the manner in which goods, wares, and merchandise shall be sold.

I do not regard the sale of the natural products of the soil by the farmer or gardener by whom they are raised, as affected by the laws relating to peddlers. Farmers are not within the mischief which these laws were intended to remedy, except as they are the victims of that mischief. They are not traders or travelers, in any legal sense. The carriage of the surplus products of the farm or garden to a market town, or from house to house, is not peddling, but is incidental to their business as farmers. Peddlers are forbidden to sell "goods, wares, and merchandise." These words were never intended to include farm products in the hands of the farmer; nor is the transportation of such products to a market for sale, or to regular customers who are supplied by the grower, the sort of business at which the laws relating to peddling are directed. The business they were intended to reach is very plainly indicated in § 1, act of March 30, 1784, 2 Sm. L. 99, which declares: "Whereas, many idle and vagrant persons may come into this state, and, under pretence of being hawkers and peddlers, may

Opinion of the Court.

greatly impose upon many persons," etc.   The act then provides for protecting the public from such fraudulent practices upon them, by forbidding any person to engage in the business of peddling without a license.   It is very clear that this prohibition was not directed against the farmer and his truck wagon, but against the itinerating vender who carries his goods on his back, or in a cart or wagon, in search of customers.   It was directed against him for the protection of the public against the impositions practiced by the class of dealers to which he belongs, in regard both to "the quality and price of goods" carried by them, and against the commission "of felonies and misdemeanors" by the vagrant persons who traveled the country "under pretence of being hawkers and peddlers."   But, while we are of opinion that farmers and gardeners are not within the letter or the spirit of our laws relating to peddling, this can in no way serve the defendants, for they are not farmers, and "soapine" is not a natural product of the soil.   The special verdict assures us that it is a manufactured article, produced by the Kendall Manufacturing Company, all of whose stockholders are non-residents of Pennsylvania, and whose factory is located in the state of Rhode Island.

On these facts, so found, the third and last question presented in this case is raised, viz., is not the sale of "soapine" from door to door in Mahanoy City inter-state commerce? This is broadly asserted, and the position is taken that our laws on the subject of peddling are an invasion of the exclusive right of congress, under the federal constitution, to regulate inter-state commerce, and therefore void.   We have understood inter-state commerce to refer to the free interchange of commodities between citizens of the different states, without regard to state lines.   If we are right about this, then the laws relating to peddling do not interfere with such interchange, and cannot be an invasion of the authority of the United States. They erect no barrier at the state line, provide for no inspection or stoppage, and levy no tax on the introduction into or transportation through the state of any sort of property whatever.   The citizen of another state may come into Pennsylvania when he will and where he will, stay as long as he chooses, open as many places for the sale of his goods as he may see fit, and enjoy the same measure of freedom in regard to the con-

Opinion of the Court.

duct of his business as a native citizen. But, when he comes within the state permanently or temporarily, he is under the protection of its laws, and the correlative duty of obedience rests on him. His rights are equal to, but not above, those of the citizen. He has no more right to sell intoxicating drinks without a license, than a citizen; no better right to sell cigarettes to children, or oleomargarine to customers, in violation of law, than a citizen. He has no better right to take a pack on his back, or a horse and cart, and engage in the business of peddling, than a citizen. To hold the contrary would be subversive of law and order, and would render the possession of the police power useless to the state. If it is true, as is now asserted, that the itinerant stranger who threads the country roads and haunts the mining towns, carrying a pack or box, filled with sham jewelry and worthless watches, to sell to those who are credulous enough to believe his representations, for many times their real value, and who, as soon as he has "gone through" a neighborhood, moves quickly out of reach,—if it is true that such a person is the ward of the federal constitution, engaged in inter-state commerce, with the power of the government of the United States interposed between him and the police power of the state, it must be admitted that we have stumbled on a startling and unlooked-for result of the investment of the general government with the power to regulate commerce. Fortunately, the federal courts do not so hold. They distinctly recognize the police power of the states, and their right to forbid altogether the sale of such articles as are injurious: Powell v. Pennsylvania, 127 U. S. 678. The same doctrine was held in the Kansas cases arising under the prohibitory feature of the constitution of that state. We think the questions in this case were rightly decided in the court below, and

The judgment is affirmed.