63  123
140a 187

THE VILLAGE OF STAMFORD, APPELLANT, *v.* JOHN H. FISHER, RESPONDENT.

*Hawking and peddling — what constitutes peddling — there must be a concurrent exposure for sale and delivery — residence of vendor immaterial.*

Under the act (chap. 465 of the Laws of 1883) authorizing the trustees of specially incorporated villages " to restrain, regulate or prevent hawking and peddling in the streets. except the peddling and sale of meats, fish, fruits and farm produce," the village of Stamford passed an ordinance forbidding such acts, and imposed a penalty for a violation thereof. One Fisher, who had no store in the village, but had one in another town, went to residences in the village of Stamford, delivered groceries and like articles to customers who had ordered them about a month before, received pay for them and took orders for future deliveries.

In an action brought by the village against him to recover the penalty imposed for a violation of its ordinance:

*Held,* that he was not a " peddler " within the meaning of the act.

That as his sales were made under prior orders it was apparent that he was not carrying goods with him for the purpose of concurrent sale and delivery, which was essential to the character of a peddler.

That the circumstance that he did not sell "in the streets" might properly be considered.

That the fact that he lived in another town was not made by the statute material. (MARTIN, J., dissenting.)

APPEAL by the plaintiff, the Village of Stamford, from a judg- of the County Court of Delaware county, entered in the clerk's office of said county on the 20th day of July, 1891, reversing a judgment of a Justice's Court in favor of plaintiff for ten dollars damages and costs, with notice of an intention to bring up for review upon such appeal the judgment of the County Court, and the decision and order of said court upon which it was rendered, and all the proceedings in said court.

The plaintiff was a village duly incorporated by chapter 798 of the Laws of 1870.

The action was brought to enforce the payment of a penalty alleged to have been incurred by the defendant by reason of his having engaged in peddling in the streets of the defendant.

The judgment of the justice in favor of the plaintiff was reversed upon the ground that the defendant was not a hawker or peddler, or engaged in peddling in the public streets of the plaintiff.

*C. L. Andrus*, for the appellant.

*Edwin D. Wagner*, for the respondent.

MERWIN, J.:

On the 8th of September, 1890, the board of trustees of the village of Stamford, the plaintiff above named, passed a resolution reading as follows:

"*Resolved*, That from and after the passage of this resolution all persons are prohibited from hawking or peddling in the public streets within the corporate limits of the village of Stamford, or selling at auction in the streets of said village of any goods, wares or merchandise of any kind or description, excepting meats, fish, fruits and farm products, until such person or persons shall have first obtained a license therefor as provided in the next section."

The section that followed, after stating the manner in which licenses should be obtained and the price to be paid therefor, pro- ceeded as follows: "Any such person failing or refusing to comply with this resolution, or to procure such licenses or pay such fee, shall

forfeit the sum of ten dollars and costs of prosecution for each offense as a penalty therefor."

These resolutions were passed under the authority given by chapter 465 of the Laws of 1883, which provided as follows:

"The trustees of any village in this State, incorporated under special act of the legislature, and who have not the powers hereinafter conferred, shall, from and after the passage of this act, have power and authority to restrain, regulate or prevent hawking and peddling in the streets; except the peddling and sale of meats, fish, fruits and farm produce, to regulate, restrain or prohibit sales by auction, and grant licenses to peddlers and auctioneers, and fix the amount to be paid therefor."

The claim of the plaintiff is, that on or about the 29th of October, 1890, the defendant was a peddler, and, as such, was engaged in peddling goods, other than the excepted articles, in the public streets of the village of Stamford without a license, and that thereby he incurred the penalty of ten dollars. The plaintiff recovered before the justice. The County Court reversed the judgment upon the ground, as indicated by the opinion of the county judge, that the evidence before the justice did not show that the defendant was a hawker or peddler, or engaged in peddling in the public streets of the village.

There is no particular dispute about the facts. The defendant resides in the village of Oneonta, which, we may assume, is a few miles distant from Stamford, and in a county adjoining Delaware county. On the 29th of October, 1890, the defendant was in the village of Stamford with a horse and wagon. Upon that occasion he stopped at several residences, and in each case took from his wagon one or more small packages of tea and coffee, and in one case a cup and saucer and plate, and in another case a bottle of lemon extract, and delivered them in the house, receiving then the pay therefor. In every instance these deliveries were made in pursuance of orders taken by him about a month before. In some of the cases, when he made these deliveries, he solicited and took orders for like articles to be delivered about a month thereafter. It does not appear where the goods came from that were delivered, nor whether the defendant was owner. There is evidence that he had a place of business in Oneonta and did not have any in Stamford.

In substance, the defendant went from house to house and obtained orders for standard goods, to be delivered in the future; and thereafter, with a horse and wagon, and prepared packages, made deliveries in pursuance of the orders and received then the pay, and at the same time took or solicited like orders for subsequent delivery. The claim of the defendant is, that this manner of doing business did not make the defendant a peddler. Reliance is placed on the circumstance that the defendant had no goods except what had been previously bargained for. It is, therefore, argued that there was no carrying to sell or exposing for sale, which are claimed to be essential characteristics of the occupation of a peddler.

Our statute does not define the term "peddler." We may, however, to some extent, infer the legislative idea from the provisions of title 4, chapter 17, part 1 of the Revised Statutes, entitled, "Of Hawkers and Peddlers." By section 1 of that title, as amended by chapter 72 of the Laws of 1880, it is provided that "no person shall be authorized to travel from place to place within this State for the purpose of carrying to sell, or exposing for sale, any goods, wares or merchandise of the growth, produce or manufacture of any foreign country other than family groceries and provisions, unless he shall have obtained a license as a hawker and peddler in the manner hereinafter directed." Inferentially, it may be said that a person who travels from place to place for the purpose of carrying to sell, or exposing for sale, any goods, wares or merchandise, would be deemed a peddler. The ordinary meaning of the term is, one who travels about the country with merchandise for the purpose of selling it. (2 Bouv. Law Dict.)

In *Rex* v. *McKnight* (10 Barn. & C., 734) the defendant, as agent for a party living in a neighboring village, went about the country once a fortnight getting orders for tea, and on a subsequent occasion made deliveries. This was held not to be an exposing for sale, or carrying to sell, within the meaning of an act requiring any peddler or other trading person, going from town to town, or to other men's houses, carrying to sell or exposing to sale, any goods, wares or merchandise, to take out a license. Emphasis was placed on the circumstance that the bargain for the goods and the delivery were on different occasions.

A similar view is taken in *Commonwealth* v. *Ober* (12 Cush., 498); *Commonwealth* v. *Gardner* (133 Pa. St., 289); *Ballou* v. *The State* (87 Ala., 145). In the latter case it is said that the distinctive feature of a peddler is that he goes from house to house carrying his articles of merchandise with him, and concurrently sells and delivers. In *Commonwealth* v. *Eichenberg* (140 Pa. St., 160), it seems to have been held that a merchant going about the country and getting orders, which he subsequently fills, is not a peddler. In *Graffty* v. *The City of Rushville* (107 Ind., 502), it was held that it made no difference whether the goods were taken along for present delivery, or orders taken for future delivery.

It will be noticed that the statute of 1883 gives authority to regulate or prevent hawking and peddling " in the streets," while it gives authority to regulate or prohibit sales by auction without that limitation. This is a circumstance that may be properly considered in determining whether the defendant was within the prohibition. He did not, in fact, in the street, sell or offer to sell any goods. The case of *Bradley* v. *The City of Rochester* (26 N. Y. St. Rep., 823), cited by the counsel for plaintiff, involved a different question.

A penal statute is to be strictly construed. (*Cameron* v. *Seaman,* 69 N. Y., 401; *The City of Buffalo* v. *Mulchady,* 1 Sheldon, 431.) Many of the evils that are supposed in some of the cases to attach to the business of the peddler would not occur in business done after the manner of defendant. If a merchant living at Stamford, by himself or his agent, had been accustomed to do just what the defendant did, it would hardly be claimed that he was a peddler. Still the statute makes no distinction in the matter of residence.

The foregoing considerations lead to the conclusion that the defendant was not shown to be engaged in peddling in the streets of the village within the meaning of the statute. It follows that the judgment should be affirmed.

HARDIN, P. J., concurred.

MARTIN, J. (dissenting):

The evidence in this case reveals that the defendant's method of transacting business in the village of Stamford was that he made business trips to that village about once a month for the purpose of selling at retail, and delivering to individuals, for use in their

families, tea, coffee, crockery, groceries and other commodities in which he dealt.   On those occasions he delivered goods of the kind mentioned that had been ordered on his preceding trip, collected pay therefor, and solicited and took orders for other goods to be delivered on his succeeding trip.   His goods were transported in a peddler's cart, drawn by a horse driven by him from house to house in the village and left standing in the street, while he delivered goods from his cart and solicited trade from the occupants of such houses.

The only claimed or pretended distinction between the defendant's method of transacting business and the method adopted by an ordinary peddler is that the defendant solicited trade when delivering goods that had been previously ordered, and subsequently delivered them and solicited other trade, the only difference being that the commodities in which he dealt were not delivered at the time the trade was solicited.   That this difference in method changed the character of the defendant's occupation from that of a peddler to some kind of an unnamed trader is the contention of the defendant, and seems to be the conclusion of a majority of this court.   In that conclusion I cannot concur.

That it is competent for the legislature, in the exercise of the police powers of the State, to prohibit persons from hawking or peddling without a license or to delegate to the trustees of a village the power to pass an ordinance regulating hawking and peddling in the streets, was correctly held by the learned county judge.

The principal, and practically the only, question which arises on this appeal is, whether the trial court was justified, by the evidence in the case, in finding that the defendant was engaged in the business of hawking or peddling in the streets of the village of Stamford, without having obtained a license therefor.   That he had obtained such license is not pretended.   So that the question is, was he engaged in hawking and peddling in the streets?

In determining the construction to be given to the words of a statute or ordinance, it is always proper to consider the purpose for which it was enacted, and the mischief it was intended to prevent or remedy.   The manifest purpose of the ordinance or resolution adopted by the trustees of the plaintiff was to protect the local merchants of the village, who had fixed places of trade therein and were taxpayers, against traveling traders or peddlers, who had no

such places of trade and who contributed nothing by way of taxes to the support of the village improvements, schools or other local interests, and also to protect its inhabitants from the arts, importunities and dishonest practices of that class of traders.

The theory upon which statutes and ordinances of this character are said to be founded is that a sound public policy demands that merchants who have fixed places of trade in a municipality, and are thus directly amenable to the legal and social restraints which must influence the business conduct of a merchant, depending for his patronage upon the inhabitants of the place where he resides, should be protected from, and not be brought in competition with, peddlers or transient traders who have no place of business in the village or city, have contributed nothing by way of taxation to the benefit of the place, and who go from house to house to ply their trade; and that public policy also requires that the inhabitants should be protected from the invasion of their homes by transient traders who are ofttimes unscrupulous, dishonest and dangerous persons. (*Morrill* v. *The State*, 38 Wis., 433; *Commonwealth* v. *Gardner*, 133 Penn. St., 289; *Graffty* v. *The City of Rushville*, 107 Ind., 502.)

Assuming that such was the purpose of the ordinance under consideration, it is quite obvious that the business carried on by the defendant was within its spirit and purpose, and, I think, within the letter of its provisions. Had the defendant delivered his goods when he solicited his trade, no doubt would exist that he was a hawker or peddler. Does the fact that he solicited trade at one time, and delivered his goods at another, essentially change the character of his vocation? As was said by MITCHELL, J., in *Graffty* v. *The City of Rushville* (*supra*): "If the itinerant trader may avoid an ordinance enacted to subserve the ends which we have supposed, by going from house to house, making sales, merely exhibiting samples of his wares, leaving another to follow to deliver the goods, or making the delivery by any other method, all the evils which were intended to be guarded against remain; while none of the protection contemplated is afforded."

In that case it was held that going from house to house, selling or offering goods for sale at retail to individuals not dealers in such commodities, whether they be carried along for present delivery or

the sales be made for future delivery, constituted the person so sell-ing a hawker or peddler within the meaning of a statute to restrain hawking or peddling.   I cannot think that his manner of doing busi-ness made the defendant any less a hawker or peddler than if he had delivered his goods when he solicited his trade.   It may be that he intended thereby to avoid the ordinance ; but it does not seem to me that his effort should succeed.

The word " peddler " is defined by Webster as :  " One who peddles ; a traveling trader ; one who carries about small commodities on his back or in a cart or wagon and sells them."   By Worcester as: "A traveling merchant ; one who travels about the country carrying commodities for sale."   By Johnson : " One who travels the country vending small commodities."   By Bouvier : " Persons who travel about the country with merchandise for the purpose of selling it."

" The leading primary idea of a hawker and peddler is that of an itinerant or traveling trader who carries goods about in order to sell them, and who actually sells them to purchasers, in contradistinction to a trader who has goods for sale and sells them in a fixed place of business."   (*Commonwealth* v. *Ober*, 12 Cush., 495.)

In the *City of Chicago* v. *Bartee* (100 Ill., 57) it is said : " The term ' peddler ' is defined by high authority to be one who deals in small or petty things, and this coincides with the popular meaning of the word, and we must conclude, as required by the canons of interpretation, that such is the sense in which it is employed in the charter.   The term ' peddler ' is used in the charter in its general and unrestricted sense, and fully embraces persons engaged in going through the city from house to house and selling milk in small quantities to different persons ; nor can it matter that appellee had regular customers to whom he daily sold his milk."

It seems to me that the defendant's business was that of a peddler within the definitions given.   He was a traveling trader or merchant ; was traveling through the country with merchandise for sale and for the purpose of selling it.   That was his business in Stamford, and he was engaged in no other there.   The claim that, because he made an executory contract to sell, rendered the contract and deliv-ery under it any the less a sale, I do not believe.   Indeed, no sale was consummated or executed until the goods were delivered.   If by taking orders for commodities to be subsequently delivered,

instead of delivering them when ordered, the itinerant trader or peddler may evade such an ordinance when his trips are made monthly, he can as well evade it by the same method when his trips are weekly or daily. The question of the time which may intervene between his trips can in no way change the principle. If he would not be a peddler in one case, he would not in the other. Can it be that the man who peddles milk from house to house ceases to be a peddler when he is told by his customers the quantity or kind of milk or cream they will want the following day or on his next trip? Or does the meat or fish peddler cease to be such when they are told by their customers on each trip what they desire or will require for the next day, or the next week, or the next month? I think not. It cannot be that a transient trader, or itinerant merchant, who travels from house to house through a village for the purpose of selling his wares, having no fixed place of business in the municipality, is changed from a peddler to a person following some unnamed vocation, by the fact that he solicits his trade in advance and then furnishes his commodities to his customers, when he both sells and delivers them in the village. The defendant was not a commercial traveler, as a commercial traveler sells at wholesale to dealers to sell again. The defendant's sales were to customers for their own use, and at retail.

In *Village of Deposit* v. *Pitts* (18 Hun, 475), where an ordinance was passed forbidding the sale of goods at public auction, except by residents, without a license, it was held that when defendant put up goods for sale at a certain price, and, if they were not taken at that price, offered them again at a lower one, and so on until they were taken or withdrawn, it was a sale at auction within the meaning of the ordinance. If such a sale is to be construed as a violation of an ordinance forbidding sales at auction, surely the defendant's business should be construed as a violation of the ordinance against hawkers and peddlers in this case. If the defendant in that case could not evade the ordinance by the method adopted, the defendant in the case at bar cannot, by his method, evade the ordinance in question in this case.

I am thus led irresistibly to the conclusion that, under the evidence in this case, the jury was fully justified in finding that the defendant was engaged in the business of hawking or peddling in the village of Stamford.

It is, however, claimed by the defendant that if he was engaged in hawking or peddling, still his business was not carried on in the street, and hence did not come within the provisions of the ordinance under consideration. I do not think this claim can be upheld. He was engaged in selling and delivering goods from house to house, employed a horse and cart for their transportation, stopped in front of each house, leaving his horse and cart in the street, removed the goods from the cart and delivered them to his customers and solicited other trade. This, I think, constituted peddling in the public streets of the village. If not, then the milk peddler, the meat peddler, the fish peddler, the fruit peddler, the tin peddler and the peddler who transports his wares in trunks, or in a pack carried in his hand or on his back, would all be exempt from the operation of the ordinance, as they trade in the houses of those with whom they deal, and not in the streets. The construction contended for would nullify the ordinance and render it practically inoperative.

While penal statutes should be strictly construed, they should not be so strictly construed as to defeat the essential purposes of their enactment, when the intent is clear, but, on the contrary, their language should be understood in the common, customary and popular signification. (*Merriam* v. *Langdon*, 10 Conn., 469.)

"The paramount object, in construing penal as well as other statutes, is to ascertain the legislative intent; and the rule of strict construction is not violated by permitting the words to have their full meaning, or the more extensive of two meanings when best effectuating the intention. They are, indeed, frequently taken [not in their strict technical sense, if that would defeat, but in a more popular sense, if that will uphold and carry out the intention of the legislature, but] in the widest sense, sometimes even in a sense more wide than etymologically belongs or is properly attached to them, in order to carry out effectually the legislative intent, or, to use Lord Coke's words, to suppress the mischief and advance the remedy. Nor is the rule of strict construction ever violated by permitting the words of a statute to have their full meaning, or by the application of common sense to its terms, in order to avoid an absurdity. They are, therefore, to be held to embrace every case within the mischief, if also fairly within the words read with such corrections as the

court may make to avoid insensibility." (Endlich on the Interpretation of Statutes, § 337.)

If we give the ordinance in question such a construction, accord to the words their full meaning, and hold that it embraces every case within the mischief intended to be suppressed, which is fairly within the words used, it becomes quite evident that the defendant's business was within its inhibition, and that the jury was justified in finding that the defendant was a hawker or peddler in the streets of the plaintiff, and liable to the penalty imposed.

No case has been cited, and I have found none decided by the courts of this State, where the question involved in this case has been determined. It has, however, been decided by courts outside of the State, but their decisions are in direct conflict. I think those cases which hold a doctrine which would render the defendant liable are based upon better reasons than those that hold the opposite doctrine, and consequently should be followed.

The principle involved in this case is an important one, and its decision may be far-reaching in its consequences. If the doctrine of the opinion of my Brother MERWIN is to prevail, many, if not most, of the ordinances of the various cities and villages in the State may be easily evaded, their purpose utterly thwarted, and a source of large revenue to those municipalities entirely cut off.

These considerations lead me to dissent from his opinion and to the conclusion that the judgment of the County Court should be reversed, and the judgment of the Justice's Court affirmed, with costs to the appellant.

Judgment of the Delaware County Court affirmed, with costs.