### W. Saulsbury v. The State.

#### No. 2178. Decided May 29, 1901.

**1.—Occupation Tax—Peddler—Constitutional Law—Interstate Commerce.**

The statute of a State by which peddlers of goods going from place to place to sell them are required, under a penalty, to take out and pay for license, and which makes no discrimination between residents of the State and those of other States, is not, as to peddlers of goods previously sent them by manufacturers in other States, repugnant to the grant by the Constitution to Congress to regulate commerce among the States. It is wholly an internal commerce which the States have the right to regulate. Following, Emert v. Missouri, 156 United States, 296, and overruling French v. State, 42 Texas Criminal Reports, 222, and Kirkpatrick v. State, 42 Texas Criminal Reports, 459.

**2.—Same—Drummer and Peddler—Distinction.**

While the authorities hold that there is a distinction between a drummer and a peddler in their relation to interstate commerce, still a party may be both a drummer and also a peddler as to the different methods of conducting his business; and the fact that his methods occasionally would bring him within the category of a drummer would not exempt him from liability under the law where the facts clearly show that as to his other methods he was a peddler and not a drummer.

**3.—Same—Peddler of Buggies—Facts Sufficient to Constitute an Offense Under the Law.**

Under the provisions of our statutes, Acts 1899, article 5055, Revised Statutes, and article 112, Penal Code, where, on a trial for peddling buggies without payment of the occupation tax and taking out a license, it appeared that defendant had the goods shipped to him in B. County, Texas, from his employers in the original packages, and same were taken by him out of the original packages and placed together in proper shape as complete buggies which defendant traveled with over the country and sold, he was guilty of violating the law and properly convicted therefor.

Appeal from the County Court of Bell. Tried below before Hon. G. M. Felts, County Judge.

Appeal from a conviction for peddling buggies without having paid the occupation tax and obtained a license; penalty, a fine of $250.

The opinion states the case.

*Saunders & Saunders,* for appellant, cited: French v. State, 42 Texas

Crim. Rep., 222; Kirkpatrick v. State, 42 Texas Crim. Rep., 459; Leisy v. Hardin, 135 U. S., 100; Asher v. State, 128 U. S., 129; Miller v. Goodman, 91 Texas, 41.

*Banks & Cochran,* for the State, filed a most able brief which the Reporter regrets can not be reproduced in full. They review and discuss all the authorities, Federal and State, upon the question of interstate commerce in relation to peddlers and drummers. As to distinction between peddler and drummer, they cited: Emmons v. Lewiston, 132 Ill., 380; Kansas v. Collins, 34 Kan., 434; Ex parte Taylor, 58 Miss., 478; Emert v. Missouri, 156 U. S., 309. As to the interstate commerce clause in the Constitution, they cited: Leisy v. Hardin, 135 U. S., 100; Emert v. Missouri, 156 U. S., 296; Commonwealth v. Ober, 12 Cush., 493; People v. Russell, 49 Mich.; 617; Coles v. Brittain, 9 N. C., 204; Wynne v. Wright, 18 N. C., 19; Tracy v. State, 3 Missouri, 3; Morrill v. State, 38 Wis., 428; Home Mach. Co. v. Cage, 9 Bax., 518; Gruffty v. Rushville, 107 Ind., 502; State v. Richards, 32 W. Va., 348; Commonwealth v. Gardner, 133 Pa., 284; Brown v. Maryland, 12 Wheat., 419; Woodruff v. Parhan (75 U. S.), 8 Wall., 140; 8 Wall (U. S.), 148; Welton v. Missouri, 97 U. S., 569; Howe Machine Co. v. Gage, 100 U. S.; Webber v. Virginia, 103 U. S., 344; Brown v. Houston, 114 U. S.; Walling v. Michigan, 116 U. S., 444; Robbins v. Taxing District, 120 U. S., 489; Asher v. Texas, 128 U. S., 129; Brennan v. Titusville, 153 U. S.; Dent v. West Virginia, 129 U. S.; Plumley v. Massachusetts, 155 U. S., 461; Hopkins v. United States, 171 U. S., 596; Schollenberger v. Pennsylvania, 171 U. S., 24; Preston v. Finley, 72 Fed. Rep., 850; Hynes v. Priggs, 41 Fed. Rep., 468; State v. Sneddy, 128 Mo.; Commonwealth v. Meyer, 92 Va., 809; Duncan v. State, 30 S. E. Rep., 755; Crystal v. Moyer, 33 S. E. Rep., 810; City of Carrolton v. Bazett, 42 N. E. Rep., 837; Pride Co. v. City of Atlanta, 31 S. E. Rep., 619; Wrought Iron Range Co. v. Carver, 118 N. C., 328; State v. Wessels, 109 N. C., 735; City of South Bend v. Martin, 146 Ind., 267; Rush v. Farley, 91 Ky., 344; Iowa v. Wheelock, 95 Iowa, 583; Kolb v. Mayor, 44 Atl. Rep., 873; State v. Montgomery, 43 Atl. Rep., 13; Racine Iron Co. v. McGammon (Ga.), decided August 7, 1900; Commonwealth v. Dunham, 43 Atl. Rep., 84; Royall v. Virginia, 116 U. S., 572; State v. Caldwell, 37 S. E. Rep., 138. In the light of the authorities, it was contended that the decisions in French v. State, 42 Texas Criminal Reports, 222, and Kirkpatrick v. State, 42 Texas Criminal Reports, 459, could not stand, and should be overruled.

BROOKS, JUDGE.—Appellant was convicted for pursuing the occupation of a peddler in Bell County, without first having paid the occupation tax of $250 fixed by law, and his punishment assessed at a fine of $250.

The agreed statement of facts shows substantially the following: "Appellant admitted that neither he nor his employers, Raterman & Luth,

had paid the tax of $250 fixed by law upon the occupation of peddling out buggies in Texas for the year 1901; and further admitted that he had been, during the months of March and April, 1901, engaged in peddling buggies in Bell County, Texas, and was so engaged on the 2d day of March, 1901, when he was arrested under the complaint filed in this cause. The following is his account of the manner in which said buggies were received and sold by him: Raterman & Luth, a partnership firm composed of H. Raterman and Theo. Luth, are buggy manufacturers living in the State of Ohio, and residents of that State. They have a factory at Cincinnati, where they manufacture buggies, hacks, and vehicles of other descriptions. In March, 1901, they shipped a carload of buggies from Cincinnati, Ohio, where their factory is located, to Temple, in Bell County, Texas, consigned to their own order. These buggies were shipped in a knocked-down condition, that is, some of them were packed as follows: The wheels were taken off the buggies and the dashboards, tongues, and shafts were detached. The wheels and dashboards were packed and bound together in the same crate with the buggies, but the tongues and shafts were shipped separately. Others were entirely taken to pieces and the different parts shipped separately; that is, the wheels, tops, springs, tongues, shafts, dashboards, axles, and bodies were separated from each other and not bound together and shipped through in that condition. The buggies were loaded in the cars in this condition at Cincinnati and shipped through to Temple in the same condition. The defendant was employed by Raterman & Luth, as their agent at Temple, to sell said buggies. He and the other employes of Raterman & Luth received the buggies at Temple in their original packages in which they were shipped, unloaded them from the cars, placed them in a house rented by him, and put them together. Defendant peddled out these buggies through Bell County in the following manner: He hitched his team to a buggy and drove through the country from place to place offering the buggies for sale. Sometimes he trailed another buggy behind the one in which he was riding. His sales were made for cash, or partly for cash and partly on time. Where he sold for cash the money was remitted to Raterman & Luth, at Cincinnati. When he sold on time he took notes for the balance of the purchase money, payable to Raterman & Luth, in Cincinnati, and sent these notes to them. When sales were made of a buggy he had with him, he delivered the buggy at the time of the sale to the purchaser. If he found a person who wanted a different kind or a different priced buggy and he had one of that description in stock in the house where he stored the buggies, he delivered it to him, the money and notes being remitted to his employer in the manner pointed out above. If he had no buggy in stock suitable to the wants of those to whom he was trying to sell, he would take his order for the kind of vehicle he wished and send it to his employers, who shipped one of that description to him, which he delivered the purchaser, remitting the money and notes in that instance as above stated. The principal sales made by him, how-

ever, were from the buggies he carried around and delivered at the time of sale. Neither defendant nor Raterman & Luth had any place of business in Texas. The only place they had was the house mentioned above, which was rented for a month in which to temporarily store their vehicles while they were being peddled out. Defendant had no interest in the buggies whatever, and in all the matters above mentioned acted as their agent. He stopped in one county only long enough to sell buggies on hand, when he moved to another.

Counsel for appellant in their able brief insist the conviction can not be sustained, because the occupation tax levied on peddlers, as applied to him, is violative of what is known as "interstate commerce," and cite in support thereof the cases of French v. State, 42 Texas Crim. Rep., 222; Kirkpatrick v. State, 42 Texas Crim. Rep., 459; Leisy v. Hardin, 135 U. S., 100, 10 Sup. Ct., 681, 34 L. Ed., 128; Asher v. Texas, 128 U. S., 129, 9 Sup. Ct., 1, 32 L. Ed., 368; Miller v. Goodman, 91 Texas, 41. The Kirpatrick case rests in the main upon the French case. In French's case, this court was endeavoring to follow the case of Leisy v. Hardin, supra. There the court seemed to indicate that, until the property brought from another State was sold, it would still not be subject to taxation, as it would be violative of interstate commerce. At the time of the decision in the French and Kirkpatrick cases, supra, our attention had not been called to Emert v. Missouri, 156 United States, 296, 15 Supreme Court, 367, 39 Law Edition, 430, which draws a distinction between a drummer and a peddler,—a distinction that we are willing to accede to, not because the one would be any the less exempt from interstate commerce, but because to that extent it is nearer in line with our views as expressed in Ex parte Asher, 23 Texas Criminal Appeals, 662. When considered abstractly, with all deference to the learned court rendering the decision, we are inclined to approve the language of Chief Justice Waite in his dissenting opinion in Robbins v. Taxing District, 120 United States, 501, 7 Supreme Court, 598, 30 Law Edition, 698, as follows: "I am unable to see any difference in principle between a tax on a seller by sample and a tax on a peddler; and yet I can hardly believe it would be contended that the provision of the same statute now in question, which fixed a license fee for all peddlers in the district, would be held to be unconstitutional in its application to peddlers who came with their goods from another State, and expected to go back." Be this as it may, we acquiesce in the decision of the Supreme Court of the United States, and under the authority of Emert v. Missouri, supra, we are constrained to overrule the cases of French and Kirkpatrick, supra. In the Emert case, the court held that the statute of a State, by which peddlers of goods going from place to place within the State to sell them are required, under a penalty, to take out and pay for license, and which makes no discrimination between residents or products of the State and those of other States, is not, as to peddlers of goods previously sent to them by manufacturers in other States, repugnant to the grant by the Constitution to Congress of the power to regulate commerce

among the States. This decision cites with approval Machine Company v. Gage, 100 United States, 676, 25 Law Edition, 754. In Emert's case the State of Missouri had levied an occupation tax upon all persons who should peddle certain kinds of goods, and defined a "peddler" to be one who dealt in the sale of such goods by going from place to place to sell them. Included in the class of goods designated was sewing machines. The Singer Manufacturing Company, a corporation of New Jersey, shipped its machines into the State of Missouri, and there delivered them to defendant, Emert, to be sold by him as their agent. Emert worked on a salary, and took the machines in a wagon, and, driving from place to place in Montgomery County, Missouri, solicited orders for their sale and offered them for sale. The evidence showed that on the day named in the information he sold and delivered to one David Partucheck a machine, and that he had not previously paid the occupation tax. Upon appeal, the case was affirmed by the State court. State v. Emert, 103 Mo., 247, 15 S. W. Rep., 81, 11 L. R. A., 219. A writ of error was sued out to the Supreme Court of the United States. In delivering the opinion of the court, Justice Gray used the following language (156 United States, 306, 15 Supreme Court, 368, 39 Law Edition, 432) : "From early times in England and America there have been statutes regulating the occupation of itinerant peddlers, and requiring them to obtain licenses to practice their trade." Then he quotes with approval the decision of Chief Justice Shaw in Commonwealth v. Ober, 12 Cushing, 493, in which defendant had been convicted of peddling without a license, and says: "In that case it was objected that the statute was repugnant to the Constitution of the United States, because at variance with the exclusive right of Congress to regulate commerce with foreign nations, and among the several States and with the Indian tribes,"—to which Chief Justice Shaw answered: "The law in question interferes with none of these. We consider this as wholly an internal commerce, which the States have a right to regulate, and in this respect this law stands on the same footing with the laws regulating the sales of wines and spirits, sales at auction, and very many others which are in force, and constantly acted upon." Then he quotes the following language of Justice Cooley: "That the regulation of hawkers and peddlers is important, if not absolutely essential, may be taken as established by the practice of the several States. They are a class of persons who travel from place to place among strangers, and the business might easily be made a pretense or a convenience to those whose real purpose is theft or fraud. The requirement of a license gives opportunity for inquiring into antecedents and character, and the payment of a fee affords some evidence that the business is not a mere pretense." And he approves the fact that many States have statutes imposing a penalty for peddlers to follow their vocation without a license; citing Cowles v. Brittain, 9 N. C., 204; Wynne v. Wright, 18 N. C., 19; Tracy v. State, 3 Mo., 3; Morrill v. State, 38 Wis., 428, 20 Am. Rep., 12; Machine Co. v. Cage, 9 Baxt., 518; State v. Richards,

32 W. Va., 348, 9 S. E. Rep., 245, 3 L. R. A., 705; Commonwealth v. Gardner, 133 Pa., 284, 19 Atl. Rep., 550, 7 L. R. A., 666. And Emert v. Missouri, supra, was cited with approval by the Supreme Court of the United States in Hopkins v. United States, 171 U. S., 596, and Schollenberger v. Pennsylvania, 171 U. S., 24.

In 1896 this question was presented to Judge Maxey, in the United States Circuit Court for the Western District of Texas, in Preston v. Finley, 72 Federal Reporter, 850. The State had imposed an occupation tax of $500 upon all persons selling or offering for sale certain illustrated papers, like the Kansas City Sunday Sun. The publisher of the paper applied for an injunction to restrain the Comptroller from the enforcement of the tax, alleging that he was a citizen of the State of Missouri, and the tax was invalid for the reason, among others, that it was levied upon an interstate traffic in which he was engaged. Judge Maxey reviewed all of the leading cases upon the question, including Leisy v. Hardin, supra, and held the tax was a valid exercise of the legislative authority of the State, and the question should be controlled by the principles laid down in Emert v. Missouri, supra; Machine Company v. Gage, supra, and others.

In the able brief of appellant's counsel the insistence is urged that having occasionally and incidentally sold buggies upon orders, for which he would not be liable to be taxed, as he sent his orders in to his employers, and the buggies were shipped upon said orders, he therefore would be relieved of the charge of which he was convicted, to wit, of peddling buggies. We understand the Emert case, supra, to settle this contention against appellant.

We note, in the able brief filed for the State by Banks & Cochran, among other authorities cited, the case of State v. Sneddy, 128 Missouri. In that case defendant was the agent of the American Harrow Company, a citizen of Michigan, and was convicted of peddling their machines without having paid an occupation tax. The harrows were shipped to defendant from Michigan to Missouri, he loaded the harrows on wagons and sent them through the country. In some instances the harrows so carried were sold outright; in others, a written order for one harrow was taken, and the harrow in the wagon immediately delivered to the purchaser; at other times a written order was taken, defendant returned to Mansfield, where he loaded another harrow, and delivered it to the party who made the order. It was contended that this constituted interstate commerce, and that the peddler's tax was void. The Supreme Court of Missouri used this language: "It is sufficient to say, without going over the same ground, that all of these questions were passed upon by this court in the opinion delivered by McFarland, J., in State v. Emert, 105 Missouri, 241, and each one of them ruled adversely to the contention of the defendant. That case his since been affirmed by the Supreme Court of the United States, and as the facts therein were on all-fours with the facts in this case, it is controlling authority in this case." We therefore hold, that it

would make no difference if appellant did occasionally take an order, send the same to his nonresident employer to be filled, and the buggies shipped to Texas. He may be a drummer and also a peddler. The facts of this case clearly show he was a peddler under the decision in Emert's case, supra.

The Supreme Court of Maine, in State v. Montgomery, 43 Atlantic Reporter, 13, where one was prosecuted for failing to pay a peddler's tax, held there was no doubt as to appellant's immunity from the tax, so far as the sale of the pictures was concerned, because he had previously taken the orders for these, sent them to his house to be filled, and they had been sent to him for delivery; but when, in addition to delivering the pictures so ordered, he undertook to sell, from place to place, certain frames which had also been sent to him by his house, the court below drew a distinction, and held that, under the rule laid down in the Emert case, he then became an itinerant peddler, and was subject to payment of the license tax exacted by the city. See also, May v. City of New Orleans, Sup. Court U. S., May, 1900.

Since the Act of 1899, peddlers of buggies have been required to pay an annual occupation tax of $250, to the State. Our statute is in all respects similar to the statute passed upon in the Emert case, supra, with this addition; our statute goes further and requires the collector to issue a license, without which a peddler can not pursue his occupation. The act in reference to the license is authorized by article 5055, Revised Civil Statutes, as follows: "The Comptroller shall cause occupation tax receipts for each occupation to be printed, with his signature, for all occupations payable to the collectors, annual receipts for those that are paid annually, and quarterly receipts for all that can be paid quarterly; such receipts shall state the name of the occupation and the amount of the tax, and have blanks for the year, month, and name of license, and also have a blank space for signature of the collector; these receipts shall each have a stub attached, stating briefly the substance of the attached receipt, and shall be bound in books; and he shall forward to each collector a proper number of said receipts, and charge him with the amount represented therein, and cause him to account therefor. The collector, whenever collecting any occupation tax, shall fill the blanks in the receipt and stub by writing thereon the time for which he collects and the name of the license, and shall sign the receipt and stub officially, and no person shall pursue any occupation unless he has a receipt, signed, as herein provided, by the Comptroller and collector; and every person, firm, or corporation keeping an office or having a local place of business shall keep posted up in a conspicuous place his or their said licenses."

Appellant was prosecuted under article 112 of our Penal Code, which provides: "Any person who shall pursue or follow any occupation, calling, or profession, or do any act taxed by law, without first obtaining a license therefor, shall be fined in any sum not less than the amount of the taxes due and no more than double that sum."

Reverting now to the facts of this case, it will be seen that appellant had the goods shipped to him in Bell County, from his employer, in the original packages; and that the same were taken out of the original packages, and then the buggies were placed together in proper shape; and appellant then proceeded over the country, selling these buggies, without having paid the peddler's occupation tax. These facts make appellant guilty of violating the law, and are sufficient to sustain the conviction. The judgment is affirmed.

*Affirmed.*