# CHARLESTON.

## STATE *v.* RICHARDS.

\*(GREEN, JUDGE, absent.)

Submitted January 22, 1889.—Decided March 7, 1889.

LICENSES.—CONSTITUTIONAL LAW.

That clause of section 2, c. 32, Code, as amended by chapter 17, Acts 1885, which reads : "Nor shall any agent travelling with one or more horses sell any lightening-rod, sewing-machine, or organ or other musical instrument without a state license therefor," is not unconstitutional, as applied to such agents selling Singer sewing-machines manufactured out of this state.

*Cole & Miller* for plaintiff in error.

*Attorney-General Alfred Caldwell* for the State.

BRANNON, JUDGE :

J. A. Richards was indicted in the Circuit Court of Wood county on the charge, that as agent and salesman of The

\*On account of illness.

Singer Manufacturing Company, a corporation under the laws of the state of New Jersey, without a license he unlawfully as such agent travelling with one or more horses did sell, offer and expose for sale sewing-machines known as "Singer Sewing-Machines." Defendant moved the court to quash the indictment; but his motion was overruled. He pleaded not guilty, and a jury convicted him; and after overruling a motion for a new trial and in arrest of judgment the court gave judgment against him for $10.00 fine. He also tendered a special plea to the effect, that at the time of committing the offence he was engaged in selling as agent, and not otherwise for The Singer Manufacturing Company, a corporation under the laws of New Jersey, and for no one else, Singer sewing-machines, which were manufactured by said company in New Jersey; and averring that section 2 of the act of the legislature of 1885, under which the indictment was found, was repugnant to the constitution of the United States; which plea was rejected and exception thereto taken.

It was proven, that in 1886 defendant was employed by The Singer Manufacturing Company to sell sewing-machines called "Singer Sewing-Machines;" that he on June 30, 1886, sold one machine in Wood county and others during the year prior to the indictment; and that in selling he travelled with one horse and wagon; and that he sold only Singer machines; and that they were all manufactured in New Jersey and none in West Virginia; and that defendant travelled through the country and sold machines; that it was his duty to sell and deliver machines received by him from the company's office in Parkersburg, W. Va. It was agreed, that said company was a corporation under the laws of New Jersey. The defendant obtained this writ of error.

The defence is based on the contention, that the statute, on which the indictment stands, is in violation of that clause of the constitution of the United States giving Congress power to regulate commerce among the states. The statute involved here is found in chapter 17, Acts 1885. Section 2 provides: "No person without a state license therefor shall act as hawker or peddler * * * Nor shall any agent travelling with one or more horses sell any lightning-rods, sewing-

machines, or organ or other musical instruments without a state license therefor." The statute contains a penalty section. It is contended, that the closing clause of section 4 renders the above provision as to agents unconstitutional. Section 4, after specifying several exemptions from the license taxation imposed by the preceding sections, closes with the clause : "Nor shall any company or person engaged in manufacturing goods in this state be required to pay a license as peddler for selling such goods either by himself or his agent."

Let us first understand the effect of the statute in hand. If it could be said that under it an agent travelling with a horse selling sewing-machines manufactured out of the state must have license, while one so travelling selling machines manufactured in the state is exempt from license, I should think the act would be unconstitutional, as held by the supreme court of the United States in *Webber* v. *Virginia*, 103 U. S. 350, and *Welton* v. *Missouri*, 91 U. S. 275. See also, *Hinson* v. *Lot*, 8 Wall. 148 ; *Ward* v. *Maryland*, 12 Wall. 418 ; *Mobile* v. *Kimball*, 102 U. S. 697. But I can not hold that such is the construction of the statute. I think an agent so travelling selling sewing-machines manufactured in the state is subject to license as well as one selling machines manufactured out of the state. The said clause of section 2 expressly subjects them to license.

Section 4 has for its purpose the taking out of sections 1 and 2 certain subjects, and exempting them from license-taxes; and, to exempt any subject from taxation so plainly imposed, we must be sure the subject falls within the exemptions. Exemption from taxation should be closely construed. Remember that the closing clause of section 4 says: "Nor shall any company or person engaged in manufacturing goods in this state be required to pay a license as peddler." But for this a home manufacturer of goods traveling and selling his goods himself like a peddler would have to get a peddler's license, as he would be doing that which would make him a peddler. So, but for it, if his agent travelled and sold, he would by even the defendant's construction, unless he were selling lightning-rods, sewing-machines, or musical instruments, be liable to peddler's license.

But this clause takes him out of the category of peddlers. The statute clearly makes peddlers a class for license, and agents travelling with one or more horses selling certain articles a separate and distinct class for license. This clause does not say he shall not pay a license as an agent so travelling, selling lightning-rods *etc.*, but that he shall not be required to pay a license " as peddler." Why make the statute say he shall not pay a tax as agent travelling with one or more horses selling lightning-rods, sewing-machines, etc., when it does not say so in terms, and when we know, that this same act has just made two separate classess of peddlers and such agents for license taxation, and when to bring a subject under exemption from taxation clearly imposed by a preceding section we should have clear language ? If the legislature had intended to exempt them from tax as agents, why did it not use the words " as agents," not the words " as peddler,"—make it exempt one tax of one amount, when it in terms exempts a different tax of a different amount ? For chapter 20 of Acts of 1885 makes different amounts of license taxes on such peddlers and agents.

Another argument : The statute says : " Nor shall any company or person engaged in manufacturing goods in this state be required to pay a license as peddler for selling such goods;" and adding the words, " either by himself or his agent,"—adding those words, not for the purpose of defining who should be exempt, for it had already declared that any company or person manufacturing goods in this state should be exempt, but only to declare him exempt whether selling by himself or by agent. The office of the clause is not to exempt agents selling goods manufactured in this state, but to exempt the company or person manufacturing goods in this state from the tax of a peddler and as a peddler, whether he sell by himself or his agent. If it be said, that the Legislature could hardly have regarded it necessary to put in this clause to exempt from peddler license, as it would not be thought that he would have to pay both peddler's and agent's license,—double tax for one right,—I reply, that the object was to exempt the home manufacturer when selling as a peddler, from peddler's license, which he would have to pay but for this clause ; and as to an agent it was inserted

out of abundant caution, to avoid any pretence of double taxes. I think this construction greatly strengthened by reference to another chapter of the Acts of 1885. The function of chapter seventeen, which we have been discussing, is to declare what callings shall be subject to license, while the function of chapter twenty is to declare the amounts of license taxes, and being *in pari materia*, they can be properly considered together.

In s. 4, c. 20, Acts 1885, fixing the rates of taxes on licenses, will be found the following language: "On Hawkers or Peddlers. On every license to act as hawker or peddler, if the person licensed travel on foot without a horse, fifteen dollars; if he travel with one or more horses, with or without a wagon or other vehicle, seventy five dollars: provided, this clause is not to be construed as embracing what are known as 'farm' or 'produce' hucksters. But no company or person who is a resident of this state, and engaged in manutacturing goods in the state, shall be required to pay a license as peddler for selling such goods, either by himself or agent." Now, here, when the Legislature comes to fix the tax on licenses, it names this same company or person engaged in manufacturing goods in this state exempted from license by the clause quoted above from section 4, c. 17; and he is exempted from what? Not from tax as agent traveling with horse or horses selling lightning-rods, sewing-machines, *etc.*, but from license as peddler, using the same language used in said closing clause of section 4, c. 17. The draughtsman remembered that he had been exempted from peddler's license by the chapter prescribing the callings subject to license, and to be consistent, exempts him from the same kind of tax when laying the tax. This shows, that the legislature which passed both these chapters, did not intend to exempt from license-tax as agents the agents of a company or person engaged in manufacturing goods in this state, when travelling with a horse, selling sewing machines, but only to declare them free from tax as peddlers, and tax them as a different class. And immediately following in the same section 4, c. 20, we find the following: "Salesmen of Sewing-Machines, Lightning-Rods, Organs, etc. On every license to sell sewing-machines,

if the salesman thereof travels with one or more horses, twenty dollars; on every license to sell organs or other musical instruments, if the salesman thereof travels with one or more horses, thirty dollars; and on every license to sell lightning-rods, if the salesman thereof travels with one or more horses, fifty dollars." Now, evidently, from this language, this is the same agent, whom we met and became acquainted with, and a short time since took leave of in the closing clause of section 4, c. 17; but no exemption is found in his favor, when he comes to be taxed, though he be the travelling sale agent of a company or person manufacturing goods in this state. Our said statute thus construed makes no discrimination as to license taxation between agents selling sewing-machines manufactured in this state and those made out of the state, both being alike liable. If there be no such discrimination between the products of different states, the state has unquestionable power to license tax, as held by the United States supreme court in *Woodruff* v. *Parham,* 8 Wall. 125; *Paul* v. *Virginia,* Id. 177; and many other cases cited in *Walling* v. *Michigan,* 116 U. S. 453 (6 Sup. Ct. Rep. 454.) And such being the construction of the state statute by the Supreme Court, avoiding such discrimination, such will be its construction as a finality by the Supreme Court of the United States, and the statute so construed will be by that court held constitutional. *Machine Co.* v. *Gage,* 100 U. S. 676; *Leffingwell* v. *Warren,* 2 Black 599.

It is an accepted rule, that a court will not declare a statute unconstitutional, unless it be clearly so, unless there be no escape from such decision; and it is also an accepted rule, that among contesting constructions that one should be given to a statute, which will render it valid and consistent with the constitution, rather than one that will overthrow it, unless it be plain that the other should be given.

The counsel for defendant cites and relies on the case of *Robbins* v. *Taxing Dist.,* 120 U. S. 489, (7 Sup. Ct. Rep. 592,) holding, that a statute of Tennessee, that "all drummers and all persons not having a regular licensed house of business in the taxing district of Shelby county, offering for sale or selling goods by sample," should be required to pay taxes for

the privilege, was void as contraiy to the United States constitution as to persons solicting the sale of goods on behalf of individuals or firms doing business in another State. It must be admitted that this case and the case of *Asher* v. *Texas*, 128 U. S. 129, (9 Sup. Ct. Rep. 1,) are in advance of former decisions of the same court in restricting taxation on callings by the State, if not in conflict with them, as seems to be admitted by Justice BRADLEY in the latter case. But they were cases of persons selling by sample or soliciting orders for persons residing or doing business in other States, taxing the mere act of soliciting, when the property had not arrived in the State. Here the party was in the State, perhaps a part of its population, travelling with the machines in his possession in the State, obtained from the store-house of the company at Parkersburg, in this State.

Justice BRADLEY's opinion contains some strong arguments as to the practical hindrance of interstate commerce by compelling a person soliciting orders for the sale of goods in one State from persons doing business in another, the goods at the time being out of the state to pay tax; thus taxing that immense business done by commercial travelling agents, by which in these days the greater part of the immense sales are made. His whole argument is plainly bearing on that. He distinctly says the States may impose taxes "on persons residing within the state or belonging to its population, and upon avocations and employments pursued therein, not directly connected with foreign or interstate commerce, or with some other employment or business exercised under authority of the constitution and laws of the United States, and the imposition of taxes upon all property within the state mingled with and forming a part of the great mass of property therein. But in making such internal regulations a state cannot impose taxes upon persons passing through the state or coming into it merely for a temporary purpose, especially if connected with interstate or foreign commerce; nor can it impose such taxes upon property imported into the state from abroad, or from another state, and not yet become part of the common mass of property therein; and no discrimination can be made by any such regulations ad- versely to the persons or property of other states, and no

regulations can be made directly affecting interstate commerce." Elsewhere he inquires: "Whether 'it is competent for a state to levy a tax or impose any other restriction upon the citizens or inhabitants of other states for selling or seeking to sell their goods in such state before they are introduced therein." He then discusses the inconvenience to business-men, if they were not allowed to send their agents into other states to solicit orders. He then refers to the suggestion that thus the taxing powers of the States may be crippled, and says: "This may be true to a certain extent, but only in those cases in which the States themselves, as well as individual citizens, are subject to the restraint of the higher law of the constitution; and this interference will be very limited in its operation. It will only prevent the levy of tax, or the requirements of a license, for making negotiations in the conduct of interstate commerce."

As applied to taxing persons travelling and soliciting orders, there seems to be force in the argument. I do not understand it to go further,—not to the extent of denying the state right to require a license tax of peddlers or travelling agents carrying their property with them in the state, and selling and delivering it, because of the accidental circumstances, that that property came for sale from another state. Justice BRADLEY, as, I think, appears from the above extracts from his opinion, has in mind and hand the case of drummers selling by sample for principals in other states, who solicit orders for the sale of property not yet in the state. As the Attorney-General argues, I think "*Robbins* v. *Taxing Dist.* merely deals with a tax on a drummer selling by sample, and not with a man carrying goods with him for delivery as he sells, as in our case." I do not understand that high and able tribunal, the Supreme Court of the United States, to have gone to the extent claimed by the defence in this case, or to have denied the power to impose license-taxes, where they do not directly affect interstate commerce, or the right to tax salesmen having their goods in the state and selling them, simply because in instances such goods are manufactured in or sold by owners residing in other states. No one will be more ready than I to accord to the constitution and laws of the United States their pre-eminence, where I

can see the conflict of State law with them; but I do not realize it in this case, nor do I construe the case of *Robbins* v. *Taxing Dist.* as operating to invalidate the statute of the state in question.

I think there was no error in rejecting the special plea. It states no other facts than the indictment contains, and the same question of the constitutionality of the statute sought to be raised by it was raised by the motion to quash; and the same remark applies to the overruling of the motion for a new trial, and the overruling of the motion in arrest of judgment. If the statute be valid, the facts appearing certainly sustain the indictment. Nor do I think the indictment bad because it does not negative that clause of the act which provides that "no person engaged in manufacturing goods in this State shall be required to pay a license as peddler," *etc.* It is not a part of the enacting clause, on which the indictment rests. The pleader need only negative exceptions in the enacting clause; not what comes in by way of proviso, or what is in nature but a proviso, and not in the enacting clause. *Hill's Case*, 5 Gratt. 682. The fact, that the indictment charges, the defendent did "sell, offer and expose for sale," whereas "sell" is the only word used in the statute, and it is no offence to "offer or expose" sewing-machines for sale, is immaterial. Those words are merely surplusage. The old maxim is, *utile per utile non vitiatur*,—surplusage does not vitiate. 1 Bish. Crim. Proc. § 478; Code 1887, c. 158, s. 10.

I am of opinion to affirm the judgment of the Circuit Court, and the Court so orders.

AFFIRMED.