THE WROUGHT IRON RANGE COMPANY *et al. v.* JOHN-SON, ordinary, *et al.*

1. Only the person who itinerates for trading purposes is a peddler. His employer, though owning the goods, team and vehicle, is not required to obtain a license, nor subject to any penalty or forfeiture for failing to do so.

2. One whose vocation is to go from place to place with a sample stove carried upon a wagon, exhibit the sample and procure orders which his employer afterwards fills by delivering through other agents the stoves so ordered, is a peddler within the meaning of the code of Georgia. But though a peddler, if he is a citizen and resident of Virginia, and the orders he solicits and procures are for stoves belonging to a Missouri corporation, which the latter holds in Missouri and keeps there until they are thus ordered, he is protected by the constitution of the United States, as lately construed by the Supreme Court, against the provisions of the code requiring a license to peddle and declaring a forfeiture for not procuring such license

3. The parts of the record specified in the bill of exceptions being as follows: "The petition, and exhibit thereto attached marked A, and the answer of the defendants":—*Held*, that the writ of error covers nothing else, and that an affidavit verifying the petition, an acknowledgment of service on the petition, an order of the judge appointing a time and place for hearing the application for injunction, and a final order denying the injunction, are not included in the specification, and that the clerk had no warrant or authority for incorporating these things in his certified transcript. These superfluous matters are wholly immaterial to the errors assigned, and this court has no use for them.

April 4, 1890.

Injunction. License. Peddlers. Constitutional law. Practice. Bill of exceptions. Before Judge MADDOX. Floyd county. At chambers, February 24, 1890.

The Wrought Iron Range Company, a corporation of Missouri, and Lee, a citizen and resident of Virginia, by their petition alleged as follows: The company man-

ufactures and sells ranges, made for cooking purposes at
its works in St. Louis and sold by its agents, by sam-
ples, throughout the United States.  It furnishes each
agent a team and wagon and a sample range, with
which the agent travels over the territory allotted to
him and, by exhibiting the sample, takes orders for the
company for the purchase of such ranges from persons
desiring to buy, and transmits the orders to the super-
intendent of the company at his headquarters, which
are sometimes in such territory and sometimes in an-
other State, and the company thereupon from its home
office and place of business fills the orders through the
superintendent and delivers the ranges as the orders are
taken, but in no case do the agents sell or deliver the
sample ranges entrusted to them.  The company has
no place of business in Georgia.  Ranges are sometimes
stored in warehouses after they are sold by sample, until
delivered to the purchasers.  On February 5th, 1890,
the company furnished Lee with two mules, a wagon
and sample range, and he went into Floyd county there-
with and, by exhibiting the sample, took an order for a
range from a citizen of the county, and forwarded this
order to the superintendent of the company at Rome,
and thereupon the company accepted the order and de-
livered the range to the purchaser in the manner above
stated.  The ordinary of Floyd county, having been in-
formed of these facts, demanded of both the company
and Lee, under the code, §§529, 1631, $50 for a license
to peddle such ranges in Floyd county, and when peti-
tioners refused to pay the same, issued executions
against them for it, which were levied by the deputy-
sheriff on the mules, wagon and sample range.  The
ordinary also issued an execution against them for an
alleged forfeiture of $100, under the code, §536, and
caused it to be levied on said property; and the sheriff,
by direction of the ordinary, has also levied both the *fi.*

*fas.* on a trunk belonging to Lee, and threatens to arrest Lee under said process if the license fee and forfeiture are not otherwise collected from petitioners, and from each of them. They deny that they or either of them are peddlers of stoves or ranges, or are liable to take out or to pay a license as peddlers to the ordinary, under said section of the code or otherwise, or that they or either of them are liable, on account of their failure to take out and pay for such licenses, to the forfeiture claimed by the ordinary. Section 1631 of the code, so far as it applies to them and each of them, is unconstitutional, in that it contravenes and is repugnant to article 1, section 8, paragraph 3, of the constitution of the United States. They pray for injunction against the ordinary and the sheriff, that the execution may be cancelled, and for general relief. Attached was a copy of the execution and the entry of levy.

The defendant admitted these allegations to be true, but denied the conclusions drawn; and alleged that the petitioners were both peddlers and liable to the tax and forfeiture. The injunction was denied, and the petitioners excepted.

J. BRANHAM, for plaintiffs.

C. A. THORNWELL, by brief, for defendants.

BLECKLEY, Chief Justice.

The facts are sufficiently stated in the official report.

1. The provisions of the code under which the ordinary proceeded furnish no warrant or authority for issuing an execution against the owner of goods because they are peddled or sold by sample through an itinerant agent. This question was virtually ruled in *Howard* v. *Reid*, 51 *Ga.* 328. In that case it was held that the person to whom the license to peddle is to be granted is he who travels and vends the goods, and that a process issued under section 536 of the code against others on the ground that they, by their agent, peddled, etc. with-

out a license, is upon its face illegal and void. That case governs this in so far as the non-resident corporation is concerned. A corporation cannot be a peddler, or obtain license to peddle, under the laws of this State. No one can obtain such license who cannot be sworn, for every peddler has to take an oath. Code, §1634. Every itinerant trader by sample is treated as a peddler. Code, §1631. The itinerant trader is the person who actually travels or passes from place to place for the purpose of trading by sample or otherwise. Within the sense and meaning of the code, when one adopts that vocation and pursues it, he becomes a peddler, and by that name or description is to be licensed. *Gould* v. *Atlanta*, 55 *Ga.* 686. The execution issued in the present case alleges peddling and selling as peddlers without first obtaining license to peddle, and without paying the charges fixed by section 529 of the code, which section prescribes a charge of fifty dollars for a license to peddle. The execution is for the collection of one hundred dollars as a forfeiture, and the law declaring the forfeiture is found in section 533 of the code, under which section the person who incurs it is one who "peddles" without first obtaining a license to do so.

From what we have said, it follows conclusively that this execution could not rightfully be enforced against the Wrought Iron Range Company. Indeed, as to that corporation it was, and is, an utter nullity.

2. The next question relates to the validity of the execution as against Lee, the person who actually itinerated and exhibited a sample stove for the purpose of obtaining orders in behalf of the corporation for stoves manufactured in the State of Missouri, and to be forwarded from thence to this State in filling orders so obtained. Lee is a citizen and resident of Virginia, and plies his vocation in Georgia to obtain orders for goods manufactured in Missouri, and not brought within this

State until after ordered through him by purchasers or those desiring to purchase. As he carries his sample stove from place to place upon a wagon drawn by mules, and exhibits the same as a means of trading or inducing offers to trade, he is doubtless a peddler within the true sense and meaning of the code. Section 1631 reads as follows: "Every peddler or itinerant trader, by sample or otherwise, must apply to the ordinary of each county where he may desire to trade, for a license, which shall be granted to him on the terms said ordinary has or may impose. They are authorized to impose such tax as they may deem advisable, to be used for county purposes. The license extends only to the limits of the county." Section 1635 requires a license for every wagon or other vehicle employed or used in vending such goods, wares or merchandise. Section 533 is as follows: "If any person, except a disabled soldier of this State, peddles without first obtaining such license in counties where the ordinaries take no action regulating peddling he forfeits to the county one hundred dollars for the first act of peddling, and for each month thereafter twenty-five dollars more." We should consider these provisions decisive of the case as to Lee, could they be held constitutional in their application to him and the business in which he is engaged. But this cannot be held consistently with the decisions of the Supreme Court of the United States in Robbins *v.* Shelby Co. Taxing Dist., 120 U. S. 489, and Asher *v.* Texas, 128 U. S. 129. These cases rule that statutes of Tennessee and Texas, not more obnoxious than our own to the interstate commerce clause of the constitution of the United States, are void for their conflict with that constitution in so far as they extend to soliciting orders and making sales by and for non-residents of the State within which the business required to be licensed is transacted. After full examination, we

can have no doubt that these decisions apply to the present case and control it. This being so, the matter admits of no further discussion at our hands. After the State has yielded to the federal army, it can very well afford to yield to the federal judiciary. Our sister States, Alabama and Louisiana, have so done. State *v.* Agee, 83 Ala. 110; Simmons Hardware Co. *v.* McGuire, 39 La. An. 848. The doctrine of coequality and co-ordination between the Supreme Court of Georgia and the Supreme Court of the United States, so vigorously announced by BENNING, J., in *Padelford* v. *Savannah*, 14 *Ga.* 439, regarded now from a practical standpoint, seems visionary. Its application to this, or any like case, would be a jarring discord in the harmony of law. Moreover, any attempt to apply it effectively would be no less vain than discordant. When we know with certainty that a question arising under the constitution of the United States has been definitely decided by the Supreme Court of that government, it is our duty to accept the decision, for the time being, as correct, whether it coincides with our own opinion or not. Any failure of due subordination on our part would be a breach, rather than the administration, of law.

The judge of the superior court erred in not granting the injunction prayed for.          *Judgment reversed.*