### J. A. French v. The State.

#### No. 2021. Decided October 17, 1900.

**1. Occupation Tax—Peddler—Interstate Commerce.**

A peddler of organs for an organ company of another State is not liable for the State occupation tax where he sells the organs as the agent of the company and delivers at the residence of the purchaser directly from his wagon or as soon as shipped from the company, he receiving in payment therefor for said company money or notes guaranteed by him. And the fact that an organ as sold and delivered by him was one which he had previously left at the residence of a third party did not alter the status of his business as interstate commerce protected by the Constitution of the United States against State interference.

**2. Same—When Foreign Goods May Become Liable Under State Occupation Tax.**

It is only after the importation of goods from another State is completed and after they have become mingled with and a part of the general property of the State that the State regulations with regard to an occupation tax for its sale can act upon it.

APPEAL from the District Court of Mills. Tried below before Hon. John M. Furman.

Appeal from a conviction for failing to pay the occupation tax as a peddler; penalty, a fine of $10.

The opinion states the case.

No briefs on file for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted under the law authorizing an occupation tax of peddlers with two horses, and his pun-

ishment assessed at a fine of $10. ' Appellant presents several assignments, but it is only necessary to consider one, to wit, that the proof showed that, as a peddler, he was engaged in the sale of property which was protected by the Constitution of the United States as interstate commerce, and that the State had no authority to require him to pay a tax. The proof shows that defendant was the agent of the Estey Organ Company, of St. Louis, Mo., and his method of selling the organs was as follows. He traveled in a two-horse hack all over Mills County, Texas, taking an organ along with him, and whenever he made a sale of the same style organ as he carried he delivered it at once to the party who purchased. If the party wanted a different style organ than the one he carried with him, he made a contract, and sent the order in to the St. Louis house, and the organ is shipped to defendant,· who takes it in person upon his said two-horse wagon or hack, and delivers it at the residence of the purchaser, receiving therefor money and notes payable to the company, which said notes were always forwarded to the company. The defendant guaranteed the notes which he took in favor of the company. It seems, if the purchaser so desired, the instrument would be shipped direct to the purchaser. The proof further showed, in regard to the sale of the organ in this case, that defendant came to the house of Willett Johnson, in Mills County, Texas, on July 12, 1899, driving a pair of horses to a hack, and represented his business as an organ dealer, and sold to witness an organ, telling witness that he had the organ at the residence of a certain man living seven or eight miles distant, in Hamilton County. A few days later defendant brought the organ to witness' house in Mills County, delivered it to the purchaser, who settled for the same in cash and notes; the notes being made payable to the Estey Organ Company, St. Louis, Mo. The question thus presented is, was the sale here made of property subject to interstate commerce? For, if it was, it is conceded that the State had no authority to tax the peddler engaged in interstate commerce, either directly on the goods sold or by indirection on his occupation of selling such property while it was under the protection of the Constitution as interstate commerce. See Asher v. Texas, 128 U. S., 129, 9 Supreme Court, 1, 32 L. Ed., 368; Welton v. Missouri, 91 U. S., 275, 23 L. Ed., 347. It is also conceded that the organ in question was protected from any interference by the State during its transit from St. Louis, Mo., up to the time of its arrival at its destination in the State of Texas. If it had been previously sold, it would be protected until its delivery to the purchaser. If it had not been sold, it would be protected up to the time of its arrival in the warehouse or depository of the manufacturer, if he had one in this State; and the later decisions hold that it would be equally protected after its arrival in the State, and until it should be sold, and mingled with the common mass of the property of the citizens of this State. See Leisy v. Hardin, 135 U. S., 100, 10 Supreme Court, 681, 34 L. Ed., 128; Miller v. Goodman, 91

Texas, 41. Leisy's case, supra, involved a shipment of beer in original packages from the State of Illinois, where it was manufactured, into the State of Iowa. Said beer was received in Iowa in the warehouse of the manufacturer, and then sold in original packages to purchasers in the State of Iowa, in contravention of a law of the State of Iowa prohibiting the sale of such intoxicating liquors except under permits granted by the State for certain purposes therein stated, to wit, medicinal and sacramental purposes, etc. The Supreme Court of the United States in that case distinctly holds, after discussing a great number of cases bearing on the subject, "that it is only after the importation is completed, and the property imported has mingled with and becomes a part of the general property of the State, that its regulations can act upon it;" and, further, that the plaintiff had the right to import such beer from the State of Illinois into the State of Iowa, and to sell it, by which act alone it would become mingled in the common mass of the property within the State. In Miller v. Goodman, supra, our own Supreme Court refers to this case with approval. The case of State v. Richards (W. Va.), 9 S. E. Rep., 245, which appears to be directly in point, contravenes, as we think, the doctrine above announced, but it does not appear to have been carried to the Supreme Court of the United States, and was rendered prior to the decision of Leisy v. Hardin; and, of course, does not discuss that case, though it does discuss the Asher case and Robbins v. Taxing District, 120 United States, 489, 7 Supreme Court, 592, 30 Lawyers' Edition, 694, and attempts to draw a distinction between those cases, which were sales by sample, and a sale of goods carried around by a dealer or drummer and sold and delivered from his wagon. With due deference to the learned judge who rendered that opinion, we must confess that we can see no difference in principle between a sale by sample and a sale from the warehouse. If interstate commerce protects an article of traffic between States in transit, and after its arrival at a warehouse, and until it is sold therefrom, and delivered thence to the purchaser by the seller, who acts as the agent of the foreign company, it is difficult to see how the same article will not be protected while the agent of the foreign company carries it around with him, and, when he finds a purchaser, then sells and delivers it to such purchaser. It is not the vehicle, as we take it, that gives character to the traffic, but it is the fact that the property has not become mingled with the common mass of the property of the citizens of the State; and if this is not done, in the one case, until a sale and delivery by the foreign company from its warehouse, we fail to see how it becomes mingled with the mass of the property of the citizens of the State until it is sold by the agent of the foreign company to the purchaser from his wagon. If it is a sale, in the one case, that terminates its character as interstate commerce, we think it equally does so in the other. It is not necessary here to enter into a discussion of this question as an original proposition. As we understand, the Constitution

of the United States and the decisions of the Supreme Court of the United States construing the same are the paramount law, and we merely take those decisions and apply them to the facts of this case, and, in our view, appellant, at the time of his arrest and conviction, was engaged in interstate commerce, and so not amenable to the occupation tax which was attempted to be collected from him. Turner v. State, 41 Texas Criminal Reports, 329, and authorities there cited. The judgment is accordingly reversed, and the cause remanded.

*Reversed and remanded.*