27 So.2d 6

**LOUDONVILLE MILLING CO. v. DAVIS et al.**

**7 Div. 865.**

Supreme Court of Alabama.

July 25, 1946.

Lusk & Burns, of Gadsden, for appellant.

Rains & Rains, of Gadsden, for appellees.

STAKELY, Justice.

The Loudonville Milling Company (appellant) brought suit against D. C. Davis and Kyle Davis, doing business under the firm name of D. C. Davis & Son and others (appellees) on a complaint based on a judgment for $2413.75 and costs, rendered for plaintiff against the defendants in the Common Pleas Court of Trumbull County, State of Ohio. Demurrer to the complaint was sustained. Thereupon the plaintiff amended its complaint by filing counts 2 and 3, each of which declared on a promissory note. These are the notes on which the Ohio judgment was based. The evidence was heard by the court, without the intervention of a jury, on counts 2 and 3 and certain pleas, which will be referred to later. The result was a judgment for defendants. Hence this appeal.

The allegations of the original complaint show that the aforesaid judgment rendered in the Ohio Court was based on two promissory notes for $1,000 and $2,000, respectively, executed by the defendants, Gadsden, Alabama, each note being payable on demand to the order of Loudonville Milling Company at the principal office of the Central National Bank in Cleveland, Ohio. The notes were dated at Loudonville, Ohio, July 5, 1938, and February 17, 1939, respectively. The allegations of the original complaint further show that the notes were "executed by the defendants herein and transmitted by the defendants * * * through the U. S. Mail to the Central National Bank of Cleveland, Ohio, for plaintiff's acceptance or rejection and if acceptable to plaintiff to be delivered by said Bank to the plaintiff and the plaintiff accepted said instruments in Ohio and they were thereupon delivered to the plaintiff in Ohio and were and are contracts governed by the laws of the State of Ohio."

The original complaint further alleges in substance that a warrant of attorney in a note to confess judgment is valid under the laws of the State of Ohio and gives the Ohio Court jurisdiction to render personal judgment thereon. It further appears that the notes sued on each contain a warrant of attorney in substance authorizing any attorney at law to appear for each maker and endorser without process in any court of record in the State of Ohio or in any other State in the United States in which this power may be lawfully exercised and

confess judgment thereon. One of the grounds of the demurrer to the original complaint was that "for aught appearing, the notes upon which said judgment was based were executed in Alabama."

■ Construing the allegations of the complaint against the pleader, we think it is clear that the notes were actually executed in Alabama. Furthermore, the only claim to jurisdiction in the Ohio Court over the defendants is by virtue of the warrant of attorney to confess judgment contained in each of the notes. It is true that in the case of Ohio Bureau of Credits v. Steinberg, 29 Ala.App. 515, 199 So. 246, certiorari denied 240 Ala. 357, 199 So. 252, this court gave full faith and credit to an Ohio judgment based on a warrant of attorney to confess judgment, but that was because the Ohio suit was on a note made in the State of Ohio. In the case at bar it appears that the transaction involving the notes was completed in Ohio by the acceptance there of the notes and it also appears that the notes provide for confession of judgment under the Ohio law. The fact, however, still remains that the notes were actually executed in Alabama, where, accordingly, public policy must be considered. Monarch Refrigerating Co. v. Faulk, 228 Ala. 554, 155 So. 74, 75. And the obligation to pay contained in the notes is not here involved, but only a provision which "looks to the future enforcement only, relates to the matter of remedy, and in legal effect is separate and distinct from the obligation to pay." Monarch Refrigerating Co. v. Faulk, supra.

■ Section 16, Title 20, Code of 1940, is not a mere regulation of practice in Alabama Courts, but is expressive of a public policy in the state condemning warrants of attorney for confession of judgment and showing an intent that such agreements shall not be recognized in the Courts of Alabama. Monarch Refrigerating Co. v. Faulk, supra. The court acted correctly in sustaining the demurrer to the original complaint.

This brings us to a consideration of the issues on which the case was tried. To counts 2 and 3 based on the aforesaid promissory notes, the defendants pleaded the general issue and several special pleas. One of these pleas—plea 2—alleged no consideration for the execution of the notes. Another of these pleas—plea 6—alleged in substance that the notes were given in consideration that plaintiff placed in a warehouse in Gadsden certain flour, title thereto being retained in plaintiff, such flour to be released to defendants as needed in defendant's business, that such flour was never released and never delivered to defendants. Another special plea—plea 3—was similar in substance to the last described plea except that it also alleged in substance that while the flour was stored in the warehouse, the place was burglarized and the flour stolen.

The proof showed that the note for $1,000 dated July 5, 1938, was executed in connection with a certain contract made and entered into between the parties on the same date. The contract offered in evidence by the defendants contains numerous provisions but we think it is sufficient for the purpose of considering the questions presented on this appeal to show that under the contract in substance the manufacturer (Loudonville Milling Co.) appointed and designated D. C. Davis & Son, consignee, as distributor of the manufacturer's products in certain territory in Alabama, which the consignee agreed to sell upon certain terms and conditions. The manufacturer agreed to deliver to consignee from time to time amounts of flour required to maintain a stock sufficient to insure prompt delivery for filling all orders received by the consignee. Until released in writing by the manufacturer title to all such stocks of flour remained in the manufacturer, and it is provided that such stocks of flour shall be stored and preserved in a particular warehouse in Gadsden, Alabama, described in the contract. When the flour is released, the consignee becomes indebted to the manufacturer in a stipulated amount and is entitled to retain all amounts which it receives on resale over such stipulated amount. Because of their importance, we set out paragraphs four and twelve of the contract, as follows:

"4. The Consignee assumes and will pay and discharge, and indemnify the Manufacturer against, all of the expenses and risks of or incident to receiving, handling, stor-

ing, protection, selling of, taxes and penalties upon, and collection for, and all loss, damage or deterioration prior to resale due to mice, rats, weevil, beetle, moth, water, dampness, contaminating odors, and all other loss, damage or deterioration whatever to the products delivered to or sold by it other than loss or damage by fire. The risk of loss or damage by fire prior to resale shall remain upon, and be borne by, the Manufacturer, but the Consignee will not do or omit anything with the effect of increasing such risk or the premiums for insurance against the same."

"12. In order to secure the prompt and punctual payment for all flour delivered, released and sold to the Consignee by the Manufacturer hereunder and the performance of all other obligations of the Consignee hereunder the Consignee has procured the execution and delivery within the State of Ohio concurrently herewith of a promissory cognovit note in the principal sum of $1,000.00 payable on demand with interest at —% per annum thereafter by D. C. Davis & Son, D. C. Davis, Mrs. D. C. Davis and R. M. Davis, H. C. Snead, payable at the Central National Bank of Cleveland and the Manufacturer is hereby authorized, at any time when the Consignee may be in default for the payment or performance of any obligations to the Manufacturer hereunder, to bring suit and/or take judgment upon such note, first giving credit for any amount thereof in excess of the amount for which the Consignee may then be liable to the Manufacturer."

Subsequently, on February 17, 1939, the parties made a supplementary contract so as to provide for an additional note in the principal sum of $2,000 to come within the terms of the contract of July 5, 1938, and in connection therewith executed the aforesaid note for $2,000 dated February 17, 1939.

The proof further tended to show that the warehouse in Gadsden was burglarized and some of the flour stored therein·under the contract was stolen, the balance of the flour being then taken back by the manufacturer. The evidence does not show the amount of the flour stolen or the amount retrieved by the manufacturer. Several days before the burglary a shipment of flour had been unloaded into the warehouse. The proof of the amount of flour in this shipment is uncertain. Under the testimony offered by the defendants, it could have been 500 barrels or possibly 600 barrels.

 Proof of the alleged burglary was offered by the defendants. Under the aforesaid contract, which was offered in evidence by the defendants, loss of flour from burglary clearly fell upon the defendants, because under the terms of the contract the consignee assumed all risks of loss, except that occasioned by fire. 46 Am.Jur. § 280, p. 464. Accordingly the proof introduced by the defendants failed to support the allegations of the plea 3. It may also be observed that the proof showed a situation different from that set up in plea 6, because the contract establishes a basis for liability for flour not released, when the flour is lost or damaged in storage, except by fire. The plea of no consideration was not established because the defendants were liable for the stolen flour. Besides the notes sued on are deemed prima facie to have been issued for a valuable consideration. Gates v. Morton Hardware Co., 146 Ala. 692, 40 So. 509; § 28, Tit. 39, Code of 1940.

 Accordingly we conclude that on the evidence adduced on the issues made by the pleading the court was in error in rendering judgment for the defendants because the notes made out a prima facie case for the plaintiff and no defense thereto was established. Since the case must be tried again, we call attention to paragraph 12 of the contract hereinabove set forth. This paragraph shows that delivery of the notes was "conditional or for a special purpose only." § 20, Tit. 39, Code of 1940; 10 C.J. S., Bills and Notes, § 79, p. 515. According to paragraph 12 of the contract, there can be no liability on the notes unless the defendants are in default under the terms of the contract. Stubblefield et al. v. Cooper, Tex.Civ.App., 37 S.W.2d 818. But this is a defense which must be set up by appro-, priate pleading, which was not done in the lower court. Brannan's Negotiable Instruments Law, Sixth Edition, p. 253. See Interstate Electric Co. v. Russell et al., 242 Ala. 233, 5 So.2d 484; Pointer v. Farmers' Fertilizer Co., 230 Ala. 87, 160 So. 252;

Davenport & Harris Undertaking Co. v. Roberson, 219 Ala. 203, 121 So. 733; 10 C.J.S., Bills and Notes, § 487, p. 1077.

Reversed and remanded.

All the Justices concur.