37 So.2d 659
**LOUDONVILLE MILLING CO. v. DAVIS et al.**
7 Div. 952.

Supreme Court of Alabama.
Oct. 14, 1948.

Rehearing Denied Dec. 16, 1948.

Lusk, Swann & Burns, of Gadsden, for appellant.

Hood, Inzer, Martin & Suttle, of Gadsden, for appellees.

SIMPSON, Justice (after stating the facts).

The suit is on the two promissory notes referred to in the statement of facts.

This is a second appeal. On the first appeal, where decision turned on a matter not here material, it was indicated that to defend on the ground of a conditional delivery of the notes and a noncompliance with the condition an appropriate special plea would be necessary.

Loudonville Milling Co. v. Davis, 248 Ala. 202, 205(7–8), 27 So.2d 6. Though decision in the lower court in the case now here was not rested on any such plea, since the case must be retried, we repeat the observation and note that the pleader has seemingly ignored the comment. As indicating the correct practice see Interstate Electric Co. v. Russell, 242 Ala. 233, 5 So.2d 484 (syllabus No. 4), and other cases cited in the first case.

The appellant, suing on the notes, was a foreign corporation and, not having qualified to do business in Alabama, § 233, Constitution of 1901; Code 1940, Title 10, § 192; Title 51, § 339, the trial court denied recovery on this ground.

■ It is true that when a non-qualifying corporation engages in an intrastate transaction in furtherance of a main corporate function, a contract issuing from such transaction shall at the option of the other party to the contract be void. Code 1940, Title 51, § 342.

Some of the cases illustrating the principle are: Royal Insurance Co. v. All States Theaters, 242 Ala. 417, 6 So.2d 494; Cable Piano Co. v. Estes, 206 Ala. 95, 89 So. 372; Alabama Western R. v. Talley-Bates Construction Co., 162 Ala. 396, 50 So. 341; Muller Mfg. Co. v. First Nat. Bank of Dothan, 176 Ala. 229, 57 So. 762; American Amusement Co. v. East Lake Chutes Co., 174 Ala. 526, 56 So. 961; Farrior v. New England Mortgage Security Co., 88 Ala. 275, 278, 7 So. 200.

■ However, a transaction involving no more than a sale, transportation and delivery of out-of-state goods by a nonresident to a local party on orders taken in Alabama would be an act of interstate commerce to which the laws of this state are not and could not be applicable. American Amusement Co. v. East Lake Chutes Co., supra, 174 Ala. at page 529, 56 So. 961; Hurst v. Fitz Water Wheel Co., 197 Ala. 10, 72 So. 314; Cobb v. York Ice Machinery Corp., 230 Ala. 95, 159 So. 811; Puffer Mfg. Co. v. Kelly, 198 Ala. 131, 73 So. 403; Mertins v. Hubbell Publishing Co., 190 Ala. 311, 67 So. 275; E. A. Foy Co. v. Haddock, 191 Ala. 101, 67 So. 978;

J. R. Watkins Co. v. Hamilton, 32 Ala.App. 361, 26 So.2d 207.

■ The decisive question then is whether the business transacted under the contract to secure which the suit notes were given was local business in Alabama as distinguished from acts of commerce between states. On this issue our conclusion is that the transactions were of the latter class, in interstate commerce and, therefore, immune from state interference or state regulation.

To reduce the facts to a brief analysis, the milling company was merely selling to appellees, under a previously executed consignment contract, its goods, to be delivered in 100-barrel lots, as previous deliveries had been paid for.

The temporary storing of the flour in the warehouse and its release to appellees was in execution of the contract to deliver these interstate goods and but a necessary incident to keeping the free flow of commerce from the nonresident to its local vendee. No such flour was commingled with the mass of local commerce, nor was it open to or offered for sale to any other customer or the general public (Kehrer v. Stewart, 197 U.S. 60, 25 S.Ct. 403, 49 L.Ed. 663); but, in its original form, was held on consignment for Davis' use alone as they operated under the previously executed contract. Grand Union Tea Co. v. Evans, D.C., 216 F. 791.

The business did not become intrastate because of the residence in Alabama of its agent, Lyons, who represented appellant in procuring new distributors, and obtaining contracts with them such as was undertaken with the appellees. Authorities, supra; 20 C.J.S., Corporations, § 1840(b), page 57; 11 Am.Jur. 45, § 46.

■ Nor was the interstate character of the sale under a contract to purchase goods to be shipped from another state affected by the fact that the goods were consigned to the shipper and the shipper's agent looked after the proper receipt of the goods. "The interstate character of a sale, made on a contract for the purchase of goods which are to be shipped from another state, is not affected by the fact that the goods are consigned to the

shipper or the agent to whom the order is given and are to be delivered by the agent. This is true even though the agent collects the purchase price of the goods from the purchaser and maintains an office which is used as headquarters while soliciting orders and as a distributing point after the goods are shipped * * *"—11 Am.Jur. 47, § 49.

■ This is true even though the consignee nonresident maintains a temporary warehouse for the purpose of receiving the consigned goods for delivery to their customers on orders taken. Lee v. LaFayette, 153 Ala. 675, 45 So. 294; 60 A.L. R. 1028.

This Lee case, last above, is clearly decisive of the question here posed for determination. There, the trafficking in the goods was held to be acts of interstate commerce and not subject to state regulation. It appears from the agreed statement of facts there that a nonresident stove manufacturer solicited orders through agents selling by sample, who took the orders and notes subject to approval of their principal, shipped the stoves under approved orders to a temporary warehouse in LaFayette, Alabama, and afterwards sent a deliveryman who delivered the stoves in the original form to the buyers from the temporary warehouse. Orders for the future delivery of ranges were sometimes taken by said salesmen before said ranges had been shipped from St. Louis and sometimes while the ranges were in transit from St. Louis to said temporary warehouse. The warehouse was moved from time to time to make delivery more convenient in the area in which the stoves were being sold.

The system of doing business in the instant case is not substantially different from the plan employed in the Lee case and perhaps the doctrine there approved might have trenched on some decisions of other courts taking a more narrow view of the question. That case, however, has been cited as authority many times in previous decisions. It is well supported by competent authority here and elsewhere and we feel bound by the holding. See Stratford v. City Council of Montgomery,

110 Ala. 619, 20 So. 127; Leisy & Co. v. Hardin, 135 U.S. 100, 10 S.Ct. 681, 34 L. Ed. 128; French v. State, 42 Tex.Cr.R. 222, 58 S.W. 1015, 52 L.R.A. 160; Miller & Co. v. Goodman, 91 Tex. 41, 40 S.W. 718; Wrought Iron Range Co. v. Johnson, 84 Ga. 754, 11 S.E. 233, 8 L.R.A. 273; Sucker State Drill Co. v. Wirtz, 17 N.D. 313, 115 N.W. 844, 18 L.R.A.,N.S., 134.

■ As was said in Swift & Co. v. United States, 196 U.S. 375, 398, 25 S.Ct. 276, 280, 49 L.Ed. 518, "commerce among the states is not a technical legal conception, but a practical one, drawn from the course of business." Or as otherwise stated by Mr. Justice Holmes in Dozier v. Alabama, 218 U.S. 124, 30 S.Ct. 649, 650, 54 L.Ed. 965, 28 L.R.A.,N.S., 264, "what is commerce among the states is a question depending upon broader considerations than the existence of a technically binding contract, or the time and place where the title passed." See also Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Davis v. Commonwealth of Virginia, 236 U.S. 697, 35 S.Ct. 479, 59 L. Ed. 795.

Our attention has been drawn to the following interesting note to the case of Sucker State Drill Co. v. Wirtz, supra, in 18 L.R.A.,N.S., 135:

"The decisions appear to warrant the statement as a general rule, that, where goods are shipped into a state for some purpose other than that of being thereafter offered to the general public for sale through the mediation of agents in the employ of the foreign corporation, such goods do not so lose their character as articles of interstate commerce as to render their sale a doing of business within the state. But, where it also appears that the corporation is maintaining an agency for the sale of such goods within the state, it is held to be doing business within the state, and, such fact being established, the goods ceased to be the subject of interstate, and become the subject of intrastate, commerce, being thus brought within the application of the statute as well as within its operation.

"Or it may be put in another way with equal truth by saying that the fact that

464

goods forming the subject of the sale are stored in the state will not, of itself, demonstrate that their sale is not interstate commerce, although it is to be taken into consideration in determining whether a sale taking place within the state was a transaction of interstate commerce."

It is well to observe also that the nature of the transaction as regards its interstate status would not be affected by the assistance appellant's agent, Lyons, rendered Davis & Son in the matter of extending Davis' business and trying to procure for them more retail customers. This was but incidental, collateral to the commerce and in the nature of an aid in accomplishing the main object. Dozier v. Alabama, supra; Davis v. Virginia, supra; Hopkins v. United States, 171 U.S. 578, 588, 19 S.Ct. 40, 43 L.Ed. 290; York Mfg. Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963, 11 A.L.R. 611; Puffer Mfg. Co. v. Kelly, supra.

The conclusion therefore is that the judgment of the trial court rested on the stated ground was laid in error and must be reversed.

Counsel for appellees argue that we should look to the other defenses interposed and justify an affirmance, but we do not think so. The lower court only gave consideration to the one defense mentioned and we think the cause is due to be remanded that the various other issues which might be properly presented on another trial may be first considered at nisi prius.

Reversed and remanded.

FOSTER, LIVINGSTON, LAWSON and STAKELY, JJ., concur.

BROWN, J., dissents.

BROWN, Justice (dissenting.)

The majority opinion is rested largely on the case of Lee v. Intendent & Town Council of LaFayette, 153 Ala. 675, 45 So. 294, 295, in which the appellant was convicted of violating a city ordinance of the Town of LaFayette, which provided: "* * * It shall be unlawful for any person, firm or corporation to engage in or carry on any business in the town for which a license is required without having paid the clerk the amount required by law and taken out license as herein provided. The price of license shall be as follows: For each sewing machine, clock, stove or range company, selling sewing machines, clocks, stoves or ranges, either themselves or by their agents, and for each person who engages in the business of selling sewing machines, clocks, stoves or ranges, twenty-five dollars; * * *."

It appears from the statement of facts that on the 9th day of May, 1907, E. N. S. Lee, a citizen of the United States and of the state of Virginia, by using a wagon and team furnished to him by said company for such purpose, delivered a range in the original packages to Y. L. Burton, a citizen of LaFayette, Chambers County, Alabama, the order for which had been previously obtained in LaFayette, Alabama, by one of said salesmen and accepted by said company. Said range, so delivered, was stored in a temporary warehouse of said company at LaFayette, Ala., · in the original package in which it was shipped from St. Louis, at the time said order was taken by said salesman and accepted by said company, and said range was delivered in LaFayette, Alabama, in said original package as aforesaid. The agreed statement of facts further shows that in no event and under no circumstances, however, are any ranges sold or offered for sale at said warehouse, nor are any ranges delivered or offered for delivery at said warehouse, nor are any ranges delivered to purchasers, except in the original packages, as aforesaid. Said warehouse is always located at some point in the State of Alabama while said salesmen are operating in said state and is frequently changed from one place to another in order to facilitate the delivery of ranges in the immediate section of the state in which said salesmen may be operating.

This court construed the agreed statement of facts in Lee's case as showing that the salesmen mentioned in that case were commercial brokers, as appears from the statement in the opinion that, "The case made by the agreed statement of facts does. not differ materially from that of Stratford v. City Council of Montgomery (110 Ala. 619, 30 So. 127), * * *." Said sales-

man, under well settled law, represented the purchaser for whom they placed orders.

In the case at bar, the evidence shows without dispute that the plaintiff had a state agent, resident in Alabama, to whom it paid a salary and who as such agent paid the rent on a permanent warehouse procured by the plaintiff's only distributor, defendant in the case, for their joint use. That flour in original packages was shipped by the plaintiff to itself and stored in said warehouse and when the distributor paid for the last previous 100 barrels of flour, accepted, used and sold it to the trade, the plaintiff's agent, who kept a key to the warehouse, delivered to said distributor another 100 barrels of flour, the delivery being made in or at the warehouse. Until said delivery was made the title to the flour remained in the plaintiff.

In the light of these facts, I am of the opinion that, this constituted doing business in Alabama and that the judgment of the trial court should be affirmed. I, therefore, respectfully dissent.