M. & R. CONSTRUCTION COMPANY, a partnership composed of Jack A. Roberts et al. and Jack A. Roberts et al., Individually, Appellants,

v.

NATIONAL HOMES CORPORATION, Appellee.

No. 18388.

United States Court of Appeals Fifth Circuit.

Jan. 12, 1961.

turned a verdict for the plaintiff in the amount of $10,030.39, and the district court entered judgment pursuant to that verdict. The defendants, appellants, insist that the district court erred in denying their motions for a directed verdict and for judgment notwithstanding the verdict on the sole contention that the plaintiff was a foreign corporation doing business in Alabama without having so qualified and, hence, that it may not maintain this diversity action on a contract to be performed in Alabama.

The plaintiff was incorporated under the laws of Indiana and had not qualified to do business in Alabama.[1] The defendants were residents of Alabama. The written contract was signed by the defendants on August 5, 1955, and was executed by the plaintiff in Lafayette, Indiana, on August 15, 1955. The contract was captioned "Dealer Sales Agreement," and contained a grant by plaintiff to the defendants of "the non-exclusive privilege of sale of its prefabricated dwelling units" in the Birmingham, Alabama, territory. The parties did business under the contract from its effective date, August 15, 1955, until July 1957. The contract contained the following provisions:

Winston B. McCall, A. W. Jones, Birmingham, Ala., William S. Pritchard, Pritchard, McCall & Jones, Birmingham, Ala., of counsel, for appellants.

George I. Case, Jr., and McGowen & McGowen, Birmingham, Ala., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This action sought payment for goods sold and delivered by plaintiff to defendants in accordance with a written contract between the parties. The jury re-

"3. Acceptance of Privilege— The Dealer accepts such privilege of sale and agrees to maintain an adequate sales office with personnel and facilities acceptable and necessary to handle the sale, construction and servicing of National Homes and the financing arrangements therefor. The Dealer shall develop such territory for sales purposes to the satisfaction of the Company. * * * *

"4. Purchase Orders—All purchase orders to the Company shall be in writing on forms provided by the Company and shall be subject to acceptance by the Company. * * * *

\* \* \* \* \* \*

---

1. The applicable provisions of the Constitution and Statutes of Alabama are: Constitution of 1901, Sec. 232; Code of 1940, Title 51, Sec. 345; Title 10, Secs. 191, 192, 194 and 196.

"6. Transportation—The Company reserves the right either to undertake itself the transportation of dwelling units sold to the Dealer, or to ship such dwelling units by common carrier.

"If the Company undertakes the transportation itself, then:

"(a) The Dealer shall pay the cost of such transportation, in advance;

"(b) If for any reason the National Homes' equipment is unable to deliver the house to the foundation, the Dealer shall provide, at his own expense, the additional assisting equipment to get the National Homes equipment from the improved street to the foundation and back to the improved street. The same provision shall apply where the job site is located on such a steep incline that National Homes' equipment is unable to deliver the house under its own power.

"(c) The title to the specific products shipped shall not pass to the Dealer until they are paid for and delivered to the job site designated by the Dealer;

"(d) The responsibility of the Company for loss or damage shall cease upon such delivery.

\* \* \* \* \* \*

"7. Construction and Servicing— The Dealer shall construct and erect all dwelling units in accordance with the plans and instructions furnished by the Company without any changes, additions or omissions.
\* \* \* \*

\* \* \* \* \* \*

"10. Company-Dealer Relationship—It is expressly understood and agreed that this agreement does not establish nor constitute the Dealer, or any officer, employee or agent thereof, as an agent or employee of the Company; nor does this agreement grant to the Dealer or any officer, employee, or agent thereof, any authority or right to transact any business for or incur any obligation against or in the name of the Company. It is expressly understood that the Dealer is and shall remain an independent contractor. This agreement is not made for the benefit of any third person or persons.

"11. Effective Period—This agreement shall become effective upon acceptance in writing, signed by an executive officer of the Company. It shall remain in effect for one year from the date of such acceptance and shall be automatically renewed thereafter for successive periods of one year each until terminated, as herein provided."

█ In diversity cases, the defense of failure of a foreign corporation to qualify under state laws is available in the federal courts the same as in the state courts. Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 538, 69 S.Ct. 1235, 93 L.Ed. 1524.

The written "Dealer Sales Agreement" signed by the defendants in Alabama had no binding force or effect until accepted and signed by the plaintiff in Indiana. J. R. Watkins Co. v. Goggans, 1942, 242 Ala: 222, 5 So.2d 472, 474. If that contract called simply for the sale and delivery of goods to be brought into the State upon orders taken in or out of the State, or mere acts of interstate commerce, the provisions of the Constitution and statutes of Alabama referred to in footnote 1, supra, would not be applicable. J. R. Watkins Co. v. Goggans, supra; Loudonville Milling Co. v. Davis, 1948, 251 Ala. 459, 37 So.2d 659, 661. If, on the other hand, the plaintiff was engaged in constructing or erecting buildings in Alabama, or in other local business for which the plaintiff was incorporated, those provisions would apply. Gray-Knox Marble Co. v. Times Bldg. Co., 1932, 225 Ala. 554, 144 So. 29, 30.

The written contract itself does not in terms call for the doing of business in Alabama, that is, for anything other than acts of interstate commerce. The defendants stress that actually the plaintiff's field representative aided in select-

ing the types of houses to be erected, was present on occasions during the showing of houses, made two trips to the Veterans Administration Office in Alabama for the purpose of clearing up questions as to structure and acceptability of some of the houses, and did other acts which might constitute the doing of business in Alabama. The plaintiff's construction supervisor also was present when some of the prefabricated houses arrived and stayed for several days giving assistance and advising how best to assemble the houses.

In J. R. Watkins Co. v. Goggans, supra, 5 So.2d at page 476, the Supreme Court of Alabama said:

"Where the evidence is in conflict, the question is one of fact to be determined by the jury. Otherwise, it is a question for the court. In the instant case, the inferences to be drawn from the evidence are not, as matter of law, so obvious as to justify the taking of the question from the jury."

The same result must follow in the present case. Under the Alabama decisions, it was open to the jury to find that the localized services were incidents of the sales which did not destroy their character as acts of interstate commerce. Puffer Mfg. Co. v. Kelly, 1916, 198 Ala. 131, 73 So. 403; Vest v. Night Commander Lighting Co., 1931, 24 Ala.App. 549, 139 So. 295; Cobb v. York Ice Machinery Corporation, 1935, 230 Ala. 95, 159 So. 811. Further, the jury might properly have believed that the localized services were mere gratuities or extras voluntarily furnished by the plaintiff and were not essential parts of the performance of the contract itself, and, hence, did not operate to invalidate the contract or to defeat recovery for its breach. Mertins v. Hubbell Publishing Co., 1914, 190 Ala. 311, 67 So. 275, 277; cf. Vest v. Night Commander Lighting Co., 1932, 224 Ala. 213, 139 So. 297. The cases of Kahn v. Maico Company, 4 Cir., 1954, 216 F.2d 233; Florio v. Powder Power Tool Corp., 3 Cir., 1957, 248 F.2d 367, relied on by the defendants, relate to the extension of jurisdiction over or service of process on foreign corporations sued as defendants, and are not authorities for the denial of relief to a foreign corporation suing as plaintiff.

The district court did not err in denying defendants' motion for directed verdict, or in denying their motion for judgment notwithstanding the verdict. The judgment is

Affirmed.